

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-30-2007

# USA v. Goff

Precedential or Non-Precedential: Precedential

Docket No. 05-5524

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"USA v. Goff" (2007). *2007 Decisions.* Paper 479.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/479

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No.  05-5524
_____

UNITED STATES OF AMERICA,

Appellant

v.

STEFAN GOFF


_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 05-cr-00541)
District Judge: Honorable Anne E. Thompson
_____

Argued March 27, 2007

Before:   FISHER, JORDAN and ROTH, *Circuit Judges*

(Filed August 30, 2007)
_____

Christopher J. Christie

George S. Leone
Sabrina G. Comizzoli **[ARGUED]**
Office of United States Attorney
970 Broad Street - Rm. 700
Newark, NJ 07102
   *Counsel for Appellant*

Jerome A. Ballarotto  **[ARGUED]**
143 White Horse Avenue
Trenton, NJ  08610
   *Counsel for Appellee*

_____

OPINION OF THE COURT
_____

JORDAN, *Circuit Judge*.

     The government appeals a sentence of four months imprisonment, three years of supervised release, and a $10,000 fine imposed on the defendant, Stefan Goff, for possessing hundreds of electronic images of child pornography. Because we agree that the District Court's sentence was not reasonable in light of the circumstances of this case, the advisory Sentencing Guidelines, and the remaining factors set forth in 18 U.S.C. § 3553(a), we will vacate and remand for resentencing.

I.

The facts are as straightforward as they are sad. For more than thirty years, Stefan Goff was employed at a private elementary school in Mercer County, New Jersey. Over time, he became a trusted and influential member of the school community. He was the president of his college alumni association and volunteered his time for a number of worthy charitable causes. He was, to all appearances, a respectable, middle-aged man leading a decent, law abiding life. But in Goff's life there was a terrible divergence between appearance and reality, because he was also a frequent customer of a child pornography internet site.

On July 12, 2004, agents from the Child Exploitation Group of the United States Bureau of Immigration and Customs Enforcement, as part of a wider investigation into an international child pornography enterprise, searched Goff's home and seized two computer hard drives. One of the hard drives contained seven images of child pornography. The other, in a "deleted items" file, contained hundreds of such images.[1] Goff was subsequently arrested and charged with

_____

[1] The defense argued at sentencing that Goff only possessed seven images, since the images in the "deleted items" file were in a virtual garbage can. However, both sides agreed at the sentencing hearing that the number of images in the deleted items file was in excess of 600, although the defense noted that there was no way to tell how many of those images were duplicates. According to the government, further analysis of the images undertaken after sentencing revealed that many of those images were duplicates and

possession of child pornography, pursuant to 18 U.S.C. § 2252A(a)(5)(B).[2] Several months later, he pleaded guilty to a one count information charging him with knowing and willful possession of at least three images of child pornography.

While not clear from the sentencing colloquy, the District Court apparently accepted the Sentencing Guidelines calculations set forth in the presentence report. Because Goff had no previous criminal record, the "Criminal History" axis of his Guidelines calculation was Category I. The base offense level was 15, which was increased by two levels because the pornographic images involved prepubuscent minors or minors who had not attained the age of 12. *See* U.S.S.G. § 2G2.4(a) and (b)(1).[3] The level was increased another two, pursuant to § 2G2.4(b)(3), because the offense involved the use of a computer. Finally, the presentence officer recommended a five-level increase because the offense

---

that Goff actually possessed 360 different pornographic images of children. As we discuss later, *see infra* at n.9, the differential has sentencing consequences.

[2] Sections 2252A(a)(5)(B) and (b)(2) provides, in relevant part, that "[a]ny person who ... knowingly possesses any ... computer disk ... that contains an image of child pornography that has been ... transported in interstate or foreign commerce by any means, including by computer ... shall be fined under this title or imprisoned not more than 10 years, or both ... ."

[3] § 2G2.4 was deleted in the November 1, 2004 version of the Sentencing Guidelines. Its provisions, however, were consolidated with the provisions of § 2G2.2.

involved 600 or more images.  U.S.S.G. § 2G2.4(b)(5)(D).
After crediting Goff with a three-level reduction for
acceptance of responsibility, the total offense level was 21.
Consequently, the applicable Guidelines range was 37 to 46
months.[4]

At sentencing, defense counsel began with two
arguments for a lesser sentence than that called for by the
Guidelines.  First he argued that the Guidelines are now
advisory only and that the District Court should not follow the
Guidelines because they called for a sentence substantially in
excess of that warranted by the offense.  More specifically, he
asserted that the Guidelines' focus on the number of
pornographic images possessed by a defendant ended up
dictating a higher than warranted sentence because Goff had
only a few images readily accessible and the rest were all
images that he had viewed in the past and tried to delete.
"The intent," said counsel, was to "utilize a small number of
images ... and then be rid of them."  Counsel contended that,
in light of Goff's intent, the Guidelines sentence was too
severe and ought not be imposed.

The second argument was essentially a spin on the
first, as defense counsel admitted.  Using the same argument
about the number of images wrongly driving the sentencing
range, counsel asserted that, even within the framework of the
Guidelines, the court should decline to give effect to the five-

---

[4] The Guideline Manual used for these calculations was the
November 1, 2003 edition.

5

level enhancement called for by Goff's possession of more than 600 images of child pornography.

The defense argument then turned to a heavy emphasis on Goff's otherwise law-abiding and exemplary life, his strong support within the community, and the impact the prosecution had already had on his life. Counsel repeatedly implied that Goff had committed a victimless crime, saying, for example, that the crime was committed "by Mr. Goff all by himself, in his room, in his house", that a psychiatrist had "found that Mr. Goff was no danger to the community, ... not a pedophile", and that "if the anonymous interaction with a far away internet wasn't possible, this may never have happened". Goff himself emphasized in a letter to the District Court that his "viewing [of the pornography] was a solitary activity confined to [his] home[,]" and that "no one else was involved at any time."

These arguments apparently resonated with the District Court. Despite government counsel's arguments that the five-level enhancement was appropriate, and that "a sentence at the bottom of the guideline range, which ... would be 37 months, ... would be appropriate[,]"[5] the court sentenced Goff

---

[5] The prosecutor went on to say that a "generous" view of the Guidelines and the case would yield a minimum sentence of 21 months. JA at 71. The reasoning behind that statement seems to be that 21 months is the bottom of the Guidelines range at offense level 16, Criminal History category I, which is the range that would have been applicable in Goff's case if there had been no five-level enhancement based on the number of pornographic images.

to a four-month term of imprisonment.[6]  The court noted its agreement with the government's argument that "the sentencing should send a message of the seriousness that the law attributes to the particular crime[,]" but then noted that Goff "deserve[d] to have his own personal life considered carefully" and that "[w]hat would be fair in this situation is largely subjective."

In imposing a sentence that was substantially lower than the range set out by the applicable Sentencing Guidelines, the court mentioned that it had considered the Guidelines, but made no mention of the range that was applicable to Goff.  The court also considered a letter written to the court by Goff's psychiatrist, which stated that Goff "had never acted out in any sexual way with children" and that Goff's behavior did not "signif[y] the presence of any sexual deviancy."  The court also noted the number of letters

---

[6] In making the case that the District Court was excessively generous in the downward variance of the sentence Goff received as compared to the sentencing range called for by the Guidelines, the government notes that the plea agreement in this case "reflected a substantial reduction in the sentence otherwise called for by Defendant's conduct." (Gov't Op'g Br. At 5, no. 4.)  The government goes on to explain that "[b]ecause it was undisputed that Goff 'received' the images by paying to download them from a child porn website, the Government could have prosecuted Goff under 18 U.S.C. § 2252A(a)(2)(A), which carries a five-year mandatory minimum." (*Id*.)  Having engaged in what appears to be charge bargaining, however, the government is ill-positioned to argue that this court should take into account the seriousness of an offense that the prosecution chose not to pursue.

of support from friends, as well as parents and faculty from the school where Goff had worked. It appears that the court relied heavily on the fact that Goff had no criminal history and had lived an "exemplary" life for fifty-four years. Based on all of those factors, the court imposed a four month period of incarceration, followed by a term of supervised release.

Pursuant to 18 U.S.C. § 3742(b), the government timely appealed the sentence imposed by the District Court as unreasonable. We have jurisdiction pursuant to 28 U.S.C. § 1291.

## II.

The Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005), rendered the Sentencing Guidelines advisory. Under *Booker*, we review the sentence imposed by the District Court for reasonableness, *Booker*, 543 U.S. at 261-62, which, in essence, calls upon us to "ask[] whether the trial court abused its discretion ... ." *Rita v. United States*, __ U.S. __, 2007 WL 1772146, at *9 (June 21, 2007). To determine whether a sentence is reasonable, the court must examine "whether the record as a whole reflects rational and meaningful consideration of the factors enumerated in 18 U.S.C. § 3553(a)."[7] *United States v. Grier*,

---

[7] Those factors are:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;
(2) the need for the sentence imposed--
    (A) to reflect the seriousness of the offense,

475 F.3d 556, 571 (3d Cir. 2007) (en banc); *see also United States v. Cooper*, 437 F.3d 324, 329 (3d Cir. 2006) ("The record must demonstrate the trial court gave meaningful consideration to the § 3553(a) factors.").

---

> to promote respect for the law, and to provide just punishment for the offense;
> (B) to afford adequate deterrence to criminal conduct;
> (C) to protect the public from further crimes of the defendant; and
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
> (4) the kinds of sentence and the sentencing range established for--
> (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines--
> ...
> (5) any pertinent policy statement--
> (A) issued by the Sentencing Commission ... subject to any amendments made to such policy statement by act of Congress ...;
> ...
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
> (7) the need to provide restitution to any victims of the offense.

10

In *United States v. Gunter*, 462 F.3d 237 (3d Cir. 2006), we set out a three-step process for district courts to follow in imposing sentences after *Booker*. Those steps are:

> (1) Courts must continue to calculate a defendant's Guidelines sentence precisely as they would have before *Booker*.
>
> (2) In doing so, they must formally rule on the motions of both parties and state on the record whether they are granting a departure and how that departure affects the Guidelines calculation, and take into account our Circuit's pre-*Booker* case law, which continues to have advisory force.
>
> (3) Finally, they are required to exercise their discretion by considering the relevant § 3553(a) factors, in setting the sentence they impose regardless [of] whether it varies from the sentence calculated under the Guidelines.

*Id*. at 247 (internal citations, quotation marks, and brackets omitted). On appeal, "we must ... ascertain whether [the § 3553(a)] factors were reasonably applied to the circumstances of the case." *Cooper*, 437 F.3d at 330. Our review is deferential, *id*., but a "significant departure" from the Guidelines range "must be adequately supported by the record." *United States v. King*, 454 F.3d 187, 195 (3d Cir. 2006).

Applying those standards here, we conclude that the four-month sentence imposed on Goff was unreasonable,[8] as the District Court committed both procedural and substantive errors in imposing that sentence. The court's decision fails to reflect the required analysis of the factors set out in § 3553(a). Even if all the § 3553(a) factors had been considered, however, a four-month sentence cannot be justified in this case, because the circumstances do not warrant such a downward variance.

III.

The District Court's sentencing decision is procedurally flawed because the court failed to follow the analysis we set out in *Gunter*. The court made no comment on defense counsel's repeated point that a five-level sentence enhancement was excessive, nor did it properly consider the factors set out in 18 U.S.C. § 3553(a). Although the District Court is not required either to comment on every argument counsel advances or to make findings as to each § 3553(a) factor, it nevertheless should expressly deal with arguments emphasized by the parties, and "the record [must] make[] clear the court took the [§ 3553(a)] factors into account in sentencing." *Cooper*, 437 F.3d at 329. The record here falls short of that.

At step one of the *Gunter* sentencing analysis, "a trial court must calculate the correct guidelines range applicable to

---

[8] The parties have not argued that the fine was unreasonable, and we do not address that aspect of the sentence.

a defendant's particular circumstances." *Cooper*, 437 F.3d at 330. The Guidelines range was properly calculated in the pre-sentence report in this case, based on the parties' understanding at the time of the number of images Goff possessed.[9] Although the District Court did not mention the Guidelines range when it imposed Goff's sentence, it appears the court ultimately accepted the range set out in the pre-sentence report, since the "Statement of Reasons" in the judgment and commitment order reflects that calculation. In adopting that calculation, however, the court passed without comment one of the central points of contention in the case.

During the sentencing hearing, Goff's attorney asserted that the District Court should not apply the five-level enhancement based on the number of images, arguing that the Guidelines are only advisory and that the enhancement was excessive. Additionally, he argued that, even if the court followed the Guidelines and left the five-level enhancement in place, it should, in its discretion under the Guidelines, apply

----

[9] In the pre-sentence report, Goff received a five-level enhancement under U.S.S.G. § 2G2.4(b)(5)(D), because his offense involved 600 or more images. This enhancement brought his total offense level to 21, which correlated to a sentencing range of 37-46 months. U.S.S.G. Ch. 5, Pt. A. The government determined after sentencing that many of the 600 images were duplicates, and that Goff only possessed 360 different images. As a result, Goff should only have received a four-level enhancement under U.S.S.G. § 2G2.4(b)(5)(C), which applies to offenses involving at least 300 images, but fewer than 600. Thus, his total offense level should have been 20, which correlates to a sentencing range of 33-41 months. U.S.S.G. Ch. 5, Pt. A.

the other § 3553(a) factors to reach a sentence below the applicable Guidelines range. All of this sounds very much like an objection to the five-level enhancement, but the record is not entirely clear. On the one hand, defense counsel did argue at length that the five-level enhancement should not apply, JA 47-53, concluding, "under these circumstance, Your Honor, ... this five levels [sic] seriously overstates the seriousness, and ... Your Honor should not impose that five level enhancement." JA 53. On the other hand, when first responding to the question "are there any objections [to the presentence report,]" JA 47, he said, "I cannot say that in a technical sense the Probation Department was incorrect in reporting to you this five level enhancement, which is why I didn't officially object to it in that manner." JA 48. The government treated the defense arguments as an objection, responding that, "for purposes of calculating the advisory guideline range that five point enhancement should clearly apply." JA 68. The prosecutor then explained that hundreds of pornographic images of children were still on the defendant's computer hard drive and had been possessed by the defendant over time. JA 69-69.

In passing sentence, the District Court did not discuss any of the parties' arguments or rule on the objection defense counsel raised even as he said he was not "officially" objecting. The judgment and commitment order later included the Guidelines calculation with the five-level enhancement, but that still has left the parties and this court without a basis for understanding the reasons for that outcome. In these circumstances, the court should have directly addressed the arguments advanced about the

14

applicability of the five-level enhancement. Neglecting to comment on those arguments, the District Court failed to adequately address the first step required by *Gunter*.[10]

The District Court had no occasion to consider *Gunter*'s step two, since it did not have before it any motion for a departure under the Guidelines. At step three, however, the District Court faced the need that exists in every case to address the § 3553(a) sentencing factors. It did not meet that need. In fact, the District Court did not mention § 3553(a) when it imposed its sentence, or the necessity of applying the § 3553(a) factors under our case law. *Gunter*, 462 F.3d at 247. The District Court did not give the Guidelines the consideration they are due and did not adequately evaluate the seriousness of Goff's offense. The court also said nothing of "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," as required by § 3553(a)(6). Discussion of that factor should have been undertaken with particular care in this case, given that the District Court sentenced Goff to a term of imprisonment far below the sentences given to similar offenders. Nor did the court adequately address the impact its sentence would have on the deterrence of similar criminal conduct.

---

[10] We would not be understood as requiring district courts to explicitly rule on every argument that may be advanced, if other aspects of the sentencing decision make a ruling implicit. Explicit rulings are plainly to be preferred, however, both for the benefit of the parties and for this court on review.

All of these are substantive problems, as explained in greater detail below, *infra* Sec. IV, but they are a product of the District Court's procedurally flawed approach. We reiterate what we have previously explained: there is no mandatory script for sentencing. *See United States v. Charles*, 467 F.3d 828, 831 (3d Cir. 2006) ("[T]he record must demonstrate that the District Court gave meaningful consideration to the relevant § 3553(a) factors. This demonstration does not require district judges to routinely state by rote that they have read the *Booker* decision or that they know the sentencing guidelines are now advisory. Nor does it require courts to state on the record that they have explicitly considered each of the § 3553(a) factors or to discuss each of the § 3553(a) factors. Rather, courts should observe the requirement to state adequate reasons for a sentence on the record so that we can engage in meaningful appellate review.") (internal citations, quotation marks, and brackets omitted). Nevertheless, the *Gunter* procedures for sentencing exist to guide the exercise of discretion. In disregarding those procedures, the District Court put at risk the substantive reasonableness of any decision it reached.

## IV.

That risk was realized in the imposition of a sentence that, as just noted, effectively ignores several important factors that ought to have been considered under § 3553(a). First and most obviously, the District Court gave the Guidelines themselves short shrift. Although after *Booker* the Sentencing Guidelines are advisory, district courts are still required to "calculate a defendant's Guidelines sentence

16

precisely as they would have before *Booker*[,]" *Gunter*, 462 F.3d at 247, in part because the Guidelines reflect a carefully considered assessment of the seriousness of federal crimes. *United States v. Goldberg*, 491 F.3d 668, 673 (7th Cir. June 27, 2007) (noting that the Guidelines are "drafted by a respected public body with access to the best knowledge and practices of penology"). Thus, the Supreme Court has recently held that "a court of appeals may apply a presumption of reasonableness to a district court sentence that reflects a proper application of the Sentencing Guidelines." *Rita*, 2007 WL 1772146 at \*6. That decision supports our prior instruction that "a within-guidelines range sentence is *more likely* to be reasonable than one that lies outside the advisory guidelines range[.]" *United States v. Coleman*, 451 F.3d 154, 158-59 (3d Cir. 2006) (emphasis in original); *see also Cooper*, 437 F.3d at 331 ("[I]t is less likely that a within-guidelines sentence, as opposed to an outside-guidelines sentence, will be unreasonable.").[11]

The Sentencing Guidelines are based on the United States Sentencing Commission's in-depth research into prior

---

[11] The Supreme Court has granted certiorari in *United States v. Gall*, No. 06-7949, to consider whether "the strength of the justification needed to sustain an outside-Guidelines sentence varies in proportion to the degree of the variance." *Rita*, 2007 WL 1772146 at \*11. We need not await the Supreme Court's decision in *Gall*, however, because, regardless of whether the justification for the variance must be proportional to the variance, we hold that the variance granted to Goff in this case was unreasonable because of the insufficient justification for it on this record.

sentences, presentence investigations, probation and parole office statistics, and other data. U.S.S.G. § 1A1.1, intro, comment 3. More importantly, the Guidelines reflect Congress's determination of potential punishments, as set forth in statutes, and Congress's on-going approval of Guidelines sentencing, through oversight of the Guidelines revision process. *See* 28 U.S.C. § 994(p) (providing for Congressional oversight of amendments to the Guidelines). Because the Guidelines reflect the collected wisdom of various institutions, they deserve careful consideration in each case. Because they have been produced at Congress's direction, they cannot be ignored. *See Rita*, 2007 WL 1772146 at *8 ("[I]t is fair to assume that the Guidelines, insofar as practicable, reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives."). The four-month sentence at issue here, imposed with barely a mention of the Guidelines, suggests they were ignored, in derogation of the express direction to the contrary in § 3553(a)(4).[12]

---

[12] As previously noted, *supra* n. 7, that subsection states in part: "The court, in determining the particular sentence to be imposed, shall consider ... the kinds of sentence and the sentencing range established for ... the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines ... issued by the Sentencing Commission ... ."

Under § 3553(a), the Guidelines are not the sole basis for determining the reasonableness of a sentence, but they are plainly important, and developments in the Guidelines can be relevant to the question of reasonableness. *See United States v. Johnson*, 427 F.3d 423, 427 (7th Cir. 2005) ("Viewing the *current* version of [the Guidelines] as one benchmark to gauge the reasonableness of

18

Even if the Guidelines did not exist, however, it is apparent that other § 3553(a) factors were not properly considered. Subsection (a)(1) requires consideration of "the nature and circumstances of the offense." Subsection (a)(2) requires consideration of "the seriousness of the offense," and the need to "promote respect for the law, ... to provide just punishment ... ."[13] Part of "just punishment" is the avoidance of unwarranted sentencing disparities, as required by § 3553(a)(6). And, of course, sentencing must "afford adequate

_____

[the defendant's] sentence ..."). Goff's sentence appears even more unreasonable when measured against the sentencing range provided in subsequent versions of the Sentencing Guidelines, including the November 1, 2006 edition of the Guidelines. Under that version of the Guidelines, the base level for the possession of child pornography is 18, rather than 15 as under the November 1, 2003 version of the Guidelines. *Compare* U.S.S.G. § 2G2.4 (November 1, 2003) *with* § 2G2.2 (November 1, 2006). Goff's adjusted offense level would thus have been 23, not 20, giving a Guidelines range of 46-57 months rather than 33-41 months.

[13] There is ample evidence of Congress's intent that offenses involving child pornography be treated severely. In 2003, Congress enacted the Prosecutorial Remedies and Other Tools to End the Exploitation of Children Today Act of 2003 ("PROTECT Act"), Pub. L. No. 108-21, 117 Stat. 650 (codified as amended, in pertinent part, at 18 U.S.C. § 3553(b)(2)(2004)). "The PROTECT Act was designed to strengthen the laws and procedures for detecting, investigating, prosecuting and incarcerating child kidnappers and sexual offenders, including those who possess child pornography." *United States v. Grigg*, 442 F.3d 560 (7th Cir. 2006).

deterrence to criminal conduct."  18 U.S.C. § 3553(a)(2)(B).
None of these were adequately taken account of by the
District Court.

Goff has attempted to downplay the nature and
seriousness of his crime, arguing in his brief that he was
simply a "curious, casual user" of the child pornography
website, and implying that his was a victimless crime because
viewing the pornography was "a solitary, private activity of
short duration driven by Mr. Goff's curiosity of the subject."
His attorney made similar statements at the sentencing
hearing.  *See, e.g.*, Joint Appendix ["JA"] at A53 ("[I]f the
anonymous interaction with a far away internet wasn't
possible, this may never even have happened.  But ... where
you have the ability to all by yourself, without involving
another human being, sit at your computer and ... bring up the
images that you want to look at,  ... he violated the statute ...
."); JA at A61 ("[He succumbed] to this urge or whatever it
was, to look at the images all by himself in his room"); JA at
A62 ("what he did alone in his house, all by himself, not
involving another human being, just the computer screen").
In the letter he submitted to the District Court before
sentencing, Goff emphasized this point, saying, "no one else
was involved at any time."  JA at 96.  The District Court
appears to have accepted this line of reasoning.  Interrupting
the prosecutor's argument that possession of child
pornography is "a serious matter and should be punished
seriously[,]" JA at 70, the court commented, "[b]ut [it's] truly
a psychological crime.  It is not a taking crime. ... Almost one
might say a psychiatric crime."  *Id.*

20

The briefest of forays into Goff's on-line fantasy world gives the lie to his cant about "solitary" activities and exposes the basic flaw in the District Court's implied conclusion that nothing wrong was going on here except in Goff's mind. According to the presentence report, one of the images is of "an adult male performing oral sex on a prepubescent female." The report goes on to describe, in detail we will spare readers, what is visible in the picture, as well as details of other examples from the hundreds of pictures Goff had paid for over time. Children are exploited, molested, and raped for the prurient pleasure of Goff and others who support suppliers of child pornography. These small victims may rank as "no one else" in Goff's mind, but they do indeed exist outside his mind. Their injuries and the taking of their innocence are all too real. There is nothing "casual" or theoretical about the scars they will bear from being abused for Goff's advantage. Far from persuading us that Goff's crime was relatively minor, his efforts to downplay the harm his actions have inflicted on others serve chiefly to highlight the concern the District Court should have had with Goff's failure to appreciate the seriousness of his offense.[14]

---

[14]At the very outset of its presentation at sentencing, the government pointed out the fundamental problem with the defense argument: "The one thing [defense counsel] said that I would take issue with, is the issue of this crime not involving another human being. This crime involves possession of child pornography, which is a very serious crime that does involve other human beings who are exploited when the images are manufactured." JA at 65.

Similarly, Goff should not have gained any ground at sentencing by claiming, through his psychiatrist, that he has "never acted out in any sexual way with children ... ." JA 77. He was not charged with molestation, so pointing out that he hadn't committed it is, in one sense, irrelevant. *See United States v. Duhon*, 440 F.3d 711, 718 (5th Cir. 2006) (explaining that the law already "makes a dramatic distinction," between offenders who simply possess child pornography and those who molest children by establishing higher sentences for offenders who directly harm minors). In another more important sense, however, it does say something meaningful, albeit not what the defense intended. While the defense effort to draw a spectator-vs.-participant distinction does not show that Goff's pornography crime was of less than ordinary severity, it does reemphasize that Goff failed to fully appreciate that severity.[15] The simple fact that the images have been disseminated perpetuates the abuse initiated by the producer of the materials. "The materials produced are a permanent record of the children's participation and the harm to the child is exacerbated by their circulation." *New York v. Ferber*, 458 U.S. 747, 759 (1982); *see also Osborne v. Ohio*, 495 U.S. 103, 111 (1990) ("The pornography's continued existence causes the child victims continuing harm by haunting the children for years to come."). Consumers such as Goff who "merely" or "passively" receive or possess child

---

[15]Goff was not totally oblivious on this point. He did seem to recognize his role to some degree when he told the court he wanted to "reiterate [his] remorse that [his] behavior may in some way have contributed to the exploitation of children." JA 62. That expression was, however, far too little and far too late.

pornography directly contribute to this continuing victimization.  Having paid others to "act out" for him, the victims are no less damaged for his having remained safely at home, and his voyeurism has actively contributed to a tide of depravity that Congress, expressing the will of our nation, has condemned in the strongest terms.  *Cf.*  Child Pornography Prevention Act of 1996 ("CPPA"), Pub. L. 104-208, sec. 121, 110 Stat. 3009-26, reprinted in 18 U.S.C. § 2251 note at 611 ("Congress finds that . . . where children are used in its production, child pornography permanently records the victim's abuse, and its continued existence causes the child victims of sexual abuse continuing harm by haunting those children in future years . . . .").

In addition the consumer of child pornography "creates a market" for the abuse by providing an economic motive for creating and distributing the materials.  *See Osborne*, 495 U.S. at 109-12; *Ferber*, 458 U.S. at 755-56; CPPA, 110 Stat. 3009-27 ("[T]he existence of a traffic in child pornographic images . . . increas[es] the creation and distribution of child pornography . . .," and "prohibiting the possession and viewing of child pornography will . . . eliminate the market . . . ."). In *United States v. Ketcham*, 80 F.3d 789 (3d Cir. 1996), we explained that Congress's criminalization of the mere possession of child pornography "discourages its production by depriving would-be producers of a market."  *Id*. at 793. The District Court should have given significantly greater weight to the seriousness of Goff's offense.

The discounting of Goff's offense becomes even clearer when his sentence is compared to the Guidelines

ranges for other child pornography offenses of a less aggravated character. As the government points out, the Guidelines range for a defendant who possessed a single pornographic image of a child older than twelve that had not been obtained through use of a computer, assuming the defendant had been given the same three-level credit for acceptance of responsibility that Goff received, would still be 10-16 months of imprisonment. See U.S.S.G. § 2G2.4 and Ch. 5 Pt. A. The sentence imposed by the District Court on Goff for possessing hundreds of internet-acquired images of pre-pubescent children is thus below the Guidelines range for a relatively less severe offense.

Of course, it is a challenge to speak of different shades of culpability for possessing child pornography. Child pornography is so odious, so obviously at odds with common decency, that there is a real risk that offenders will be subjected to indiscriminate punishment based solely on the repugnance of the crime and in disregard of other Congressionally mandated sentencing considerations. The District Court here was clearly and commendably endeavoring to avoid the tendency to ignore the individual defendant because of the enormity of his crime. Nevertheless, the court ended up erring in the opposite direction. It placed undue emphasis on Goff's personal life and failed to give adequate weight to the severity of his offense.

While Goff's personal life and personal characteristics are a factor to be considered under 18 U.S.C. § 3553(a)(1), the District Court improperly took Goff's lack of criminal history, and the fact that he did not commit a more severe

24

crime by molesting a child, as somehow meaning that his offense was dramatically different from other child pornography cases. It is not. *See United States v. Grinbergs*, 470 F.3d 758, 761 (8th Cir. 2006) (finding that, in a child pornography case, the District Court erred when it relied on the fact that the defendant had not molested a child or produced child pornography to deem an offense "atypical simply because the defendant had not committed other crimes."). Indeed, one of the reasons that the Guidelines are of significant assistance in sentencing is that they incorporate the results of research into what may be called the "heartland" of sentencing considerations and incarceration periods for typical offenses and offenders. *See* U.S.S.G. § 1A1.1, intro, comment 3 (stating that the Sentencing Commission used "data estimating the existing sentencing system as a starting point."); *cf. Rita*, 2007 WL 1772146, at *9 (discussing potential arguments that a sentence should be reduced because "the case at hand falls outside the 'heartland' to which the Commission intends individual Guidelines to apply").

Despite his arguments implying the contrary, Goff's criminal history, in Category I, is similar to the vast majority of those convicted for possession of child pornography.[16] In

---

[16] The District Court also put undue emphasis on Goff's service to the community in contravention of a policy statement in the Guidelines, a factor to be considered under § 3553(a)(5), which only allows such a departure when a defendant's service is extraordinary. *See* U.S.S.G. § 5H1.11 ("Military, civic, charitable, or public service; employment-related contributions; and similar prior good works are not ordinarily relevant in determining

25

fact, in the U.S. Sentencing Commission's *Final Report on the Impact of United States v. Booker On Federal Sentencing*, March 2006, Table 18 (available at http://www.ussc.gov/booker_report/Booker_Report.pdf), the Commission reported that, in post-*Booker* sentencing of those convicted of possession of child pornography, 322 out of 387 total offenders had a Criminal History Category of I. Thus, Goff is no outlier; he is, on the contrary, plainly in the "heartland" of offenders.[17]

Furthermore, other defendants sentenced for possession of child pornography in New Jersey have received much harsher sentences than Goff's. For example, another defendant caught as a result of the same investigation that caught Goff was sentenced by another Judge in the District of New Jersey to 28 months of imprisonment based on a

---

whether a sentence should be outside the applicable guideline range."); *Koon v. United States*, 518 U.S. 81, 96 (1996) ("If the special factor is a discouraged factor ... the court should depart only if the factor is present to an exceptional degree[.]"). Only truly extraordinary circumstances, circumstances which are not evident in this case, could have allowed the District Court to determine that a four-month sentence was appropriate.

[17]We note that the sentencing range set out in the Guidelines specifically accounts for the criminal history of the person being sentenced. *See* U.S.S.G. § 5H1.8; *Koon v. United States*, 518 U.S. 81, 111 (1996) ("The District Court abused its discretion by considering appellants' low likelihood of recidivism. The [Sentencing] Commission took that factor into account in formulating the criminal history category.").

26

Guidelines range of 27-33 months. See *Adams v. United States*, No. 06-3398 (MLC), 2007 WL 1544208, at *8 (D.N.J. May 29, 2007). As a result, Goff's sentence creates a potential disparity in sentence for those convicted of possession of child pornography in New Jersey, and across the country, based on little, if anything, more than the luck of which judge is assigned to a particular case.[18]

Finally, § 3553(a) also demands that sentencing courts pay attention to the need to deter future crimes. "The logic of deterrence suggests that the lighter the punishment for downloading and uploading child pornography, the greater the customer demand for it and so the more will be produced." *Goldberg*, 491F.3d at 672. Thus, deterring the production of child pornography and protecting the children who are victimized by it are factors that should have been given significant weight at sentencing, but in fact received not a word from the District Court. If they were considered at all, it is not apparent on this record.

_____

[18]Judges may have, as the government suggests was the case here (Appellant's Opening Brief at 8, n. 7; Reply Brief at 18, n. 7), sincerely held policy disagreements with the weight of sentences generally called for by the Guidelines in certain categories of cases. However, as we have recently emphasized in *United States v. Ricks*, 2007 WL 2068098 (3d Cir. July 20, 2007), policy disagreements are not a basis for bypassing the Guidelines. *See id.* at *5 (stating on review of sentence rejecting Guidelines' treatment of crack cocaine convictions, "[w]e conclude that a district court fails to 'meaningfully consider' the Guidelines when it rejects the 100-to-1 ratio as a matter of policy").

V.

In sentencing Goff, the District Court did not properly consider the Sentencing Guidelines or the remaining factors set forth in § 3553(a).[19] Whether viewed as a departure within the Guidelines or a variance from them,[20] a sentence of four months is a drastic reduction and unreasonable in light of the

---

[19] Goff also asserts that his sentence actually reflects a split sentence which is within the Guidelines range. Goff asserts that his sentence of four months of imprisonment, followed by three years of supervised release, for a total of forty months, fits within the proper Guideline range of 33-41 months. However, Goff's assertion is belied by the language of the Guidelines. Goff's offense level and criminal history category clearly put him in Zone D of the Sentencing Table. U.S.S.G. Ch. 5 Pt. A. According to the Guidelines, "[i]f the applicable guideline range is in Zone D of the Sentencing Table, the minimum term shall be satisfied by a sentence of imprisonment." U.S.S.G. § 5C1.1. This is in contrast to sentences in Zone A, where no imprisonment is required, Zone B, where a sentence of probation can be appropriate, and Zone C, where at least half of the minimum term of the sentence must be satisfied by imprisonment. *Id*. Thus, because Goff is not eligible for a split sentence under the appropriate Guidelines provision, his argument that his short period of confinement followed by supervised release constitutes a split sentence is without merit.

[20] After *United States v. Vampire Nation*, 451 F.3d 189 (3d Cir. 2006), our court distinguishes between traditional departures based on a specific Guidelines provision and sentencing "variances" from the Guidelines that are based on *Booker* and the § 3553(a) factors. *Id*. at 195 n.2.

28

facts and circumstances revealed in the record. Accordingly, the sentence must be vacated and the case remanded for re-sentencing.