**NOT PRECEDENTIAL**

**UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT**

_____

No. 14-3177
_____

UNITED STATES OF AMERICA

v.

RAFAEL CORDERO,

Appellant

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(District Court No.: 2-12-cr-00385-001)
District Judge: Honorable Paul S. Diamond

Submitted under Third Circuit LAR 34.1(a)
On March 16, 2015

Before: RENDELL, FUENTES and BARRY, Circuit Judges

(Opinion filed: April 29, 2015)

O P I N I O N*

**RENDELL**, <u>Circuit Judge</u>:

Appellant Rafael Cordero appeals from the District Court's sentence of 180 months incarceration followed by a three year term of probation, a $5,000 fine and a $400 mandatory assessment. Cordero was a 22-year veteran of the Philadelphia Police Department when he was charged and convicted of two counts of obstruction of justice and two counts of false statements within a federal matter. He argues that the District Court abused its discretion by imposing an above-guidelines sentence in his case based on a clearly erroneous factual conclusion—namely, that he assisted his half-brother, David Garcia, in the major drug trafficking organization he was working with. Additionally, he argues that the totality of the circumstances did not justify the extent to which the District Court deviated from the guidelines range in imposing his sentence. Thus, he argues, we should vacate his sentence and remand for resentencing.

We review the District Court's sentencing order for abuse of discretion. *Gall v. U.S.*, 552 U.S. 38, 51 (2007). In doing so, we first ensure that the District Court committed no a significant procedural error in arriving at its decision. *United States v. Wise*, 515 F.3d 207, 217 (3d Cir. 2008). If the sentence is procedurally sound, we determine its substantive reasonableness by looking at the totality of the circumstances.

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

*Gall* 552 U.S. at 50. Because the District Court's ruling was procedurally sound and substantively reasonable, we will affirm.

## Facts and Procedural History

In 2010, the DEA Philadelphia Division began an investigation into a heroin trafficking organization which revealed that Edwin Medina (aka "June") was distributing large quantities of prepackaged heroin within the 25th Police District. It further revealed that Medina and his associates, including Garcia, his "right-hand" man, were using a garage located at 538 East Indiana Avenue in Philadelphia to store narcotics and guns, count money, and hold meetings regarding the drug distribution business. At the time that Garcia joined Medina's enterprise, he had been serving as a confidential informant for the FBI, primarily working with FBI Task Force Officer Robert Clark. Upon learning of Garcia's criminal behavior and duplicity, however, the FBI discreetly deactivated Garcia as a source, and thereafter provided him with misinformation regarding their investigation into Medina.

The DEA obtained authorization to wiretap Garcia's and Medina's phones. Intercepted calls and texts revealed several incriminating contacts between Garcia and Cordero. On June 3, 2011, the DEA installed a service camera on a light pole to monitor activities occurring at Medina's garage. On that same day, Garcia called Cordero and told him that he was concerned that a pole camera had been mounted at that location. Cordero asked Garcia if "June knows" about the camera, and promised Garcia that he would "check it out." (App. 58-59). The next day, while on duty, Cordero went to investigate the camera, and after doing so, called Garcia to provide him information

3

regarding its location, the direction it was pointed, its technical capabilities and strengths. Garcia passed the information to Medina, who then removed three cars and three guns from the garage. After listening to these conversations, the FBI then obtained authorization to wiretap Cordero's phone.

On July 21, 2011, the DEA and FBI arrested a number of targets within the Medina drug trafficking organization. On that night, Garcia informed Cordero about the arrests, and notified him that law enforcement were at the garage. Cordero then went to the garage, parked his vehicle and peered into it through a window to investigate. DEA Special Agent Mark Koss, who was inside, observed Cordero's actions and confronted him, causing Cordero to hold up his police radio and state that he was "on the job." (App. 235-36). Immediately after leaving the scene, Cordero called Garcia and provided him with information about the law enforcement activities he had just observed in the garage. Cordero then called his supervisor Sergeant James Muller to report that he had been driving by the garage and had seen the police activity when he stopped to see what was going on, and that he had been pulled aside by law enforcement. He mentioned nothing about Garcia. Later in the day, Cordero told Garcia to lie to Officer Clark about whether Garcia knew about where any money or drugs were located. Over the next several days, when Cordero and Garcia spoke over the phone, Cordero learned that Garcia had removed items from the garage after the search, including a DVR tape that showed Cordero's presence at the search. During one call, Cordero instructed Garcia to tell law enforcement that Garcia's truck was in the garage at the time of the search because Garcia was paying rent to keep it there.

4

On July 26, 2011, FBI Agent Brian Monahan and Philadelphia Police Task Force Officer Joseph Chilutti interviewed Cordero. At the trial, Agent Monahan testified that Cordero explained that he went to the garage because he knew it was used to facilitate the storage and sale of narcotics and firearms. He denied knowing anyone associated with the garage. Cordero also stated that he was at the garage because he had seen police activity in the area, and the only person he called after he left the search was his supervisor, Sergeant Muller. However, there was evidence that after these conversations, Cordero spoke with his brother Enrique Cordero, who asked Cordero, in code, whether he should come to Cordero's house to retrieve the money that Garcia was storing there. Enrique Cordero testified that shortly after that call, he called Cordero's wife and arranged to meet discreetly down the street from Cordero's home, where he received a bag containing $20,000 in cash.

At trial, Cordero denied any knowledge of Garcia's involvement in drug distribution and insisted that his actions on behalf of Garcia were because he believed that Garcia was an FBI informant. He testified that he did not know Medina. He testified that he never told Agents Monahan or Koss that he believed the garage was used for the storage and sale of narcotics, and insisted that their testimony to the contrary was false.

On July 31, 2012, a jury found Cordero guilty of two counts of obstruction of justice and two counts of false statements within a federal matter. The Probation Office submitted a Presentence Investigation Report ("PSR") that determined a base level offense of 30. As the offense involved at least 3 but less than 10 kilograms of heroin, the use of a dangerous weapon, and the obstruction of an investigation of a drug trafficking

5

organization, the base level offense was determined to be 36. Pursuant to U.S. Sentencing Guideline § 2J1.2(c), which provides that if the offense involves the obstruction of an investigation or prosecution of a criminal, U.S.S.G. 2X3.1 (accessory after the fact) should be applied to that criminal offense, 6 levels were subtracted for an adjusted base offense level of 30. The Probation Office further determined that Cordero had abused a position of trust, and therefore applied a 2-level enhancement under U.S.S.G. § 3B1.1. Finally, the Probation Office found that Cordero had obstructed justice by testifying falsely at trial, and applied a 2-level enhancement under U.S.S.G. 3C1.1, which resulted in a total offense level of 34. Cordero was in criminal history category I, and therefore his guideline range was determined to be 151-188 months. At the sentencing hearing on June 25, the parties agreed that the guideline calculation as determined by the Probation Office was correct. The Court, at the request of the government, granted a 2-level reduction to reflect an impending amendment to the drug guidelines. Thus, the amended guideline range was determined to be 121-151 months.

Cordero argued for a downward variance from this range. The Court rejected Cordero's contention that he did nothing to aid a drug trafficking organization, and only attempted to help his brother, who he believed was a federal informant. The Court noted that the evidence overwhelmingly showed that Cordero was trying to help his brother sell drugs and defeat a federal investigation of a major drug trafficking organization. Additionally, the Court noted the seriousness of the offense he had committed, and that Cordero, captured on tape, had come across as arrogant, defiant, and completely contemptuous of federal authority. The Court concluded that an upward variance was

6

warranted under the facts and circumstances, and imposed a total sentence of 180 months' imprisonment, 29 months above the top of the advisory guideline range.

**Discussion**

*1. Procedural Error*

In reviewing a challenge to the reasonableness of a sentence, this Court "must first ensure that the district court committed no significant procedural error." *Gall*, 552 U.S. at 51. In *United States v. Goff*, this Court held laid out a three-step process for district courts to follow in making sentencing determinations: (1) the district court must calculate a defendant's Guidelines sentence, (2) it must formally rule on the departure motions of both parties, and state on the record whether they are granting a departure motion and how that departure affects the Guidelines calculation, and (3) it must exercise its discretion by considering the relevant factors laid out in 18 U.S.C. § 3553(a). 501 F.3d 250, 254 (3d Cir. 2007).[1] If a district court commits procedural error, the case is remanded for resentencing. *Id.* at 214 (citing *United States v. Ausburn*, 502 F.3d 313, 328 (3d Cir. 2007).

As an initial matter, there is no doubt that the District Court followed the three-step process laid out in *Goff*. The parties agreed to the Guideline calculation as determined by the Probation Office. The Court then granted Cordero a 2-level reduction to reflect an impending amendment to the drug guidelines. The Court considered the

---

[1] The § 3553(a) factors are statutory factors that a district court must consider in tailoring a sentence. *United States v. Merced*, 603 F.3d 203, 213 (3d Cir. 2010). Among others, these include: the seriousness of the offense, promoting respect for the law, providing just punishment for the offense, affording adequate deterrence to criminal conduct, and protecting the public from further crimes. 18 U.S.C. § 3553(a).

defense's request for downward departures, and concluded that a departure was not warranted. Finally, the Court considered the factors set forth in § 3553(a), and concluded that a sentence 29 months above the guideline range was appropriate.

However, imposing a sentence based on clearly erroneous facts is procedural error. *United States v. Merced*, 603 F.3d 203, 214 (3d Cir. 2010). Cordero urges that the District Court's sentence was procedurally unsound because it primarily relied on the erroneous factual conclusion that his actions were intended to aid Garcia's drug trafficking activities on behalf of the Medina drug trafficking organization. A finding of fact is deemed "clearly erroneous" when, "although there is evidence to support it, the reviewing body on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Wise*, 515 F.3d at 218 (quoting *Concrete Pipe & Prods. of Cal., Inc. v. Constr. Laborers Pension Trust for S. Cal.*, 508 U.S. 602, 622 (1993)).

This argument is unavailing. Cordero's actions indicate that he was well aware of Garcia's role in the Medina drug organization, that he knew who Medina was, and, moreover, that by using his position of public trust to help Garcia avoid law enforcement detection, he was helping the organization itself. Moreover, Cordero's protracted efforts to make fraudulent statements when asked about Garcia and his activities to help Garcia reveal that he knew that his actions were illegal. When confronted by law enforcement while he was at the garage, Cordero lied, failing to reveal the information he had about the garage's role in the Medina drug organization. Cordero also instructed Garcia to lie to Officer Clark about Garcia's knowledge of where guns or drugs were located. Cordero lied both times he was interviewed about the purpose of his presence at the garage, and

8

told the same story to the jury at trial. Based on these facts, any reasonable factfinder could reach the conclusion that Cordero knew Garcia was a drug trafficker employed by the Medina drug organization, and that he endeavored to protect Garcia from detection by law enforcement. Therefore, the District Court's finding of fact that Cordero acted to aid a drug trafficking organization was not "clearly erroneous."

### 2. Substantive Reasonableness

If the district court's sentence is procedurally sound, the appellate court must examine the substantive reasonableness of the sentence. *Merced*, 603 F.3d at 214. The substantive reasonableness inquiry is highly deferential to the district court. *U.S. v. Tomko*, 562 F.3d 558, 568 (3d Cir. 2009). The fact that the appellate court might reasonably have concluded that a different sentence was appropriate is insufficient to justify reversal. *Gall*, 552 U.S. at 51. "[I]f the district court's sentence is procedurally sound, we will affirm it unless no reasonable sentencing court would have imposed the same sentence on that particular defendant for the reasons the district court provided." *Tomko,* 562 F.3d at 568. "The touchstone of reasonableness is whether the record as a whole reflects rational and meaningful consideration of the factors enumerated in 18 U.S.C. § 3553(a)." *United States v. Grier*, 475 F.3d 556, 571 (3d Cir. 2007).

Cordero cannot demonstrate that "no reasonable sentencing court would have imposed the same sentence on that particular defendant for the reasons the district court provided." *Tomko*, 562 F.3d at 568. In explaining its decision to impose a sentence 29 months higher than the Guidelines range, the Court considered the arguments of both parties, including a letter from Police Commissioner Charles Ramsey, who urged the

9

Court to impose the highest sentence permissible. The Court noted the seriousness of Cordero's crime – as a police officer, not only did he defy the law he was sworn to protect, but he abused the privileges of his law enforcement position to subvert and frustrate a federal investigation. The Court considered and rejected, as it was entitled to do, Cordero's pleas for leniency – including the significance of Cordero's length of public service, noting that he had in fact abused his position of public service in order to commit crime and violate the public trust. The Court also rejected the significance of Cordero's awards and honors, the argument that his behavior was allegedly aberrant in this case, the fact that he had lost his pensions, that he did not profit from the crimes, and that as a police officer he faced a greater danger in prison. Cordero's mere disagreement with the weight the Court gave to the sentencing factors set forth in § 3553(a) does not demonstrate that he has met his burden to show that the District Court abused its discretion. We conclude that the District Court's sentence was substantively reasonable.

## Conclusion

The District Court's sentencing decision was procedurally sound, and substantively reasonable. Therefore, we will affirm.