**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 17-1339
_____

UNITED STATES OF AMERICA,

Appellant

v.

ANDREW RAMEY
_____

On Appeal from the United States District Court
for the District of New Jersey
(No. 3-16-cr-00121-001)
District Judge:  Honorable Anne E. Thompson

Submitted pursuant to Third Circuit LAR 34.1(a)
November 14, 2017

Before:  CHAGARES, VANASKIE, and FUENTES, <u>Circuit Judges</u>.

(Filed: January 19, 2018)

_____

OPINION[*]
_____

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

CHAGARES, Circuit Judge.

In this appeal, the Government challenges a sentence imposed by the United States District Court for the District of New Jersey. Andrew Ramey, the appellee and defendant in the underlying criminal action, argues that the District Court acted within its discretion when it applied a downward variance and sentenced him to 30 days of imprisonment for possession of child pornography. For the reasons stated below, we will vacate the sentence and remand for resentencing.

I.

As this Opinion is non-precedential and we write mainly for the parties, our factual recitation is abbreviated. In 2012, a law enforcement investigation discovered that Ramey possessed over 250 child pornography videos, some of which involved toddlers. Ramey was arrested and charged with possession of child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B). He pleaded guilty to the offense, admitting in his plea agreement that the material "involved a prepubescent minor or a minor under the age of 12" and that "[t]he offense involved 600 or more images." App. 144. Having accessed the videos via a peer-to-peer file sharing network, Ramey also admitted that his offense involved distribution of child pornography. Id. The Probation Department and the parties agreed that the applicable sentencing range under the United States Sentencing Commission Guidelines ("the Guidelines") was 63 to 78 months of imprisonment.

At his sentencing hearing, Ramey requested that the District Court apply a variance and sentence him to probation. He argued, inter alia, that the Guidelines are flawed with respect to child pornography cases, that there were no "sadistic or

2

masochistic images" in his collection, that this is his first offense, and that he "had some developmental cognitive issues growing up." App. 12–16. Ultimately, the District Court imposed a sentence of only 30 days of imprisonment and a subsequent five-year term of supervised release.

Providing an explanation for the variance, the District Court theorized that Congress did not intend to punish defendants like Ramey for the victimization of children in child pornography:

> The horror of the victims' suffering, unfortunately, cannot be visited, addressed with punishment directly to the persons who actually acted out so as to physically assault these children. This is a unique crime because the punishment is directed toward persons such as this defendant who were the viewers, customers who chose to look at the material that was produced . . . from this victimization of these children. So, unfortunately, we do not have before the court for punishment the persons who actually physically injured and assaulted these children. It's a unique situation with child pornography offenses. We have before us somebody who went into his computer and went to software and some mysterious peer-to-peer association and finds images and for months was looking, peering at these images of the horror that the victims were suffering and his offense is the looking, going into his computer to look at this.
>
> Now, that's what we have with this kind of offense and the offender in this particular case it would seem to me is probably not the person that Congress had in mind who should be punished for the horror and the suffering that these children went through.

App. 27–28. The District Court's explanation then concluded with a brief discussion of the four-year gap between Ramey's arrest and sentencing, his childhood development,[1]

---

[1] The District Court did not specify how Ramey's developmental issues impacted his offense or culpability. At sentencing, the court stated that "[t]here was a learning disability that was spotted" and that Ramey had an "unusual [childhood] behavior of eating pencils and tissues, a predilection for touching walls and photographs . . . in some kind of tactile exploration, fixation, as yet unexplained." App. 29. The court continued,

3

the support of his siblings, the harm that incarceration would inflict on him, and the lack of deterrent value of incarceration under these circumstances. App. 28–30. The Government objected and then timely filed this appeal.[2]

## II.

The District Court exercised jurisdiction pursuant to 18 U.S.C. § 3231. We have jurisdiction over this appeal pursuant to 18 U.S.C. § 3742(b). "We review sentences for abuse of discretion, and review them for both procedural and substantive reasonableness." United States v. Grober, 624 F.3d 592, 599 (3d Cir. 2010) (citing United States v. Tomko, 562 F.3d 558, 567 (3d Cir. 2009) (en banc)).

## III.

Our review of the District Court's sentencing is deferential; however, that deference is not limitless. Although the Guidelines are advisory and "there is no mandatory script for sentencing," United States v. Goff, 501 F.3d 250, 256 (3d Cir. 2007), a district court must follow a three-step sentencing process. It must first "correctly calculate the defendant's Guidelines range." United States v. Merced, 603 F.3d 203, 215 (3d Cir. 2010). Next, it must "rule on any motions for departures." Id. Finally, "after

"[r]eading through this presentence report there is something that is not the normal development that evidently has never been addressed." Id.

[2] About a month after the Government filed its Notice of Appeal, Ramey submitted a request to the District Court that, in accordance with Local Appellate Rule 3.1, it issue a written amplification of its sentencing decision. The District Court responded on May 26, 2017 with a letter addressed to counsel. App. 128–30. The brief letter was untimely as it was filed more than thirty days after the notice of appeal was docketed. See 3d Cir. L.A.R. 3.1. Furthermore, it provided little extra explanation and is insufficient for the same reasons that the justification for the substantial downward variance articulated at the original sentencing was deficient.

giving both parties an opportunity to argue for whatever sentence they deem appropriate," the court must exercise its discretion with "meaningful consideration" of the sentencing factors contained in 18 U.S.C. § 3553(a). Id.

We have twice reversed this same District Court for extraordinary downward variances in cases involving the possession of child pornography. See Goff, 501 F.3d at 262 ("[A] sentence of four months is a drastic reduction and unreasonable in light of the facts and circumstances revealed in the record."); United States v. Lychock, 578 F3d 214, 229 (3d Cir. 2009) ("We conclude that, by ignoring relevant factors and failing to offer a reasoned explanation for its departure from the Guidelines, the District Court once again 'put at risk the substantive reasonableness of any decision it reached.' . . . That risk of unreasonableness was realized, under the particular circumstances of this case, in Lychock's sentence of probation.") (quoting Goff, 501 F.3d at 256). In both Goff and Lychock, we detailed the significant harm caused by possession of child pornography, the seriousness of the offense, and the clarity with which Congress has expressed its view on the matter.

On this third occasion to consider the District Court's drastic sentencing reductions, we reiterate that the possession of child pornography alone, even absent any physical contact between the offender and a minor, is an extremely serious crime that causes substantial harm. See United States v. Williams, 553 U.S. 285, 307 (2008) ("Child pornography harms and debases the most defenseless of our citizens."). As we noted in Goff, "[t]he simple fact that the images have been disseminated perpetuates the abuse initiated by the producer of the materials" and "[c]onsumers such as Goff who . . .

5

possess child pornography directly contribute to this continuing victimization." 501 F.3d at 259. Moreover, possession creates a market for child pornography that incentivizes further production of such materials. Id. As such, there is no "mere" or "passive" act of possessing child pornography. To possess such material is to victimize children in a significant and active manner.

A.

We first consider procedural unreasonableness. In this analysis, we must ensure that the District Court "'committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence — including an explanation for any deviation from the Guidelines range.'" Tomko, 562 F.3d at 567 (quoting Gall v. United States, 552 U.S. 38, 51 (2007)). A significant variance from the Guidelines range "requires a more significant justification than a minor one." Grober, 624 F.3d at 599 (citing Gall, 552 U.S. at 50).

The extraordinary variance here, which is 98% below the bottom of the applicable Guidelines range, necessitates a careful and significant justification; however, the District Court proceeded in a conclusory fashion. The conclusion that Ramey "is probably not the person that Congress had in mind who should be punished for the horror and the suffering that these children went through" is troubling, particularly because Congress has criminalized possession of child pornography as a separate offense from the physical abuse of children.

6

To the extent that the District Court asserted a policy disagreement with the Guidelines, that reasoning must fail. Although a district court is permitted to vary from the Guidelines based on such a policy disagreement, its rationale should "take into account all of the sentencing factors, not just one or two of them in isolation" and it must provide "sufficiently compelling reasons to justify" the variance.[3] Merced, 603 F.3d at 221. Although the District Court offered a brief discussion of the § 3553(a) factors, it failed to provide compelling justifications for its sentence based upon the factors as a whole. Instead, the District Court offered vague descriptions of Ramey's individual characteristics and largely unsupported conclusions regarding deterrence and the harm of incarceration. App. 28–30. Thus, the District Court's sentencing in the instant case was procedurally unreasonable.

B.

Though we may remand based solely upon our conclusion that the District Court's sentencing was procedurally unreasonable, we will also consider substantive unreasonableness as we did in Goff and Lychock. Our substantive review of a sentence is based upon the totality of the circumstances, Merced, 603 F.3d at 214, and we will vacate a sentence on substantive grounds only if "no reasonable sentencing court would have imposed the same sentence on that particular defendant for the reasons the district

---

[3] A district court need not, however, "recite and make findings as to every one of the § 3553(a) factors, as long as the record makes clear that the factors have been considered in deciding the sentence." Merced, 603 F.3d at 222.

court provided." <u>Tomko</u>, 562 F.3d at 568. Our consideration of substantive unreasonableness is guided by the § 3553(a) factors. <u>Merced</u>, 603 F.3d at 214.

Although the District Court relied heavily upon the first § 3553(a) factor — the nature and circumstances of the offense and the history and characteristics of the defendant — that factor does not support the District Court's downward variance. The facts and circumstances here are similar to those in <u>Goff</u> and <u>Lychock</u>: possession of hundreds of child pornography videos, some depicting prepubescent minors or those under the age of 12; limited or nonexistent prior criminal history; and the ready support of family members. In those prior cases, we found that comparable sentencing reductions were substantively unreasonable, and the facts of this case do not warrant a different result. Ramey's learning disability and his exhibition of some unusual childhood behaviors do not meaningfully distinguish the case, because while these facts might warrant a reduction in sentencing, they do not support one of this magnitude.

In addition, as we recognized in <u>Goff</u>, "[s]ubsection (a)(2) requires consideration of . . . the need . . . to 'provide just punishment,'" which includes "the avoidance of unwarranted sentencing disparities, as required by [subsection] (a)(6)." 501 F.3d at 258. Here, the 98% downward variance from the bottom of the applicable Guidelines range would provide little punishment at all and create a significant sentencing disparity, which undercuts the interest in uniform sentencing practices and the perception of fair sentencing. Thus, the second and sixth of the § 3553(a) factors gravitate strongly in favor of remand.

On balance, these and the remaining factors simply do not support the extreme variance in this case. No reasonable court would impose a sentence of 30 days of imprisonment on these facts. Thus, as we did in <u>Goff</u> and <u>Lychock</u>, we conclude that the District Court's sentence is substantively unreasonable.

## IV.

For the reasons stated above, we will vacate the District Court's sentence and remand for resentencing in accordance with this Opinion.