# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 09-2872

_____

United States of America,          *
                              *

        Plaintiff – Appellee,   *

                              *   Appeal from the United States
    v.                      *   District Court for the
                              *   Northern District of Iowa.

Michael D. Sampson, Jr.,     *

                              *

        Defendant – Appellant.  *

_____

Submitted: April 13, 2010
Filed: May 26, 2010

_____

Before WOLLMAN, MURPHY, and SHEPHERD, Circuit Judges.

_____

MURPHY, Circuit Judge.

Michael D. Sampson, Jr. pled guilty to knowingly transporting and attempting to transport child pornography in interstate commerce, in violation of 18 U.S.C. § 2252A(a)(1) and (b)(1), and to possessing a firearm after having been convicted of a felony, in violation of 18 U.S.C. § 922(g)(1). Sampson appeals the denial of his motion to withdraw his guilty plea to the felon in possession count, arguing that his plea was coerced. He also contends that the district court[1] erred in its interpretation of the guideline enhancement relating to the number of pornographic images and in

_____

[1]The Honorable Linda R. Reade, Chief Judge, United States District Court for the Northern District of Iowa.

concluding that his prior conviction for indecent solicitation is a crime of violence. We affirm.

## I.

On February 3, 2008 America Online (AOL) intercepted two emails sent from Sampson's email address, each of which contained the same 16 second digital video depicting an adult male engaging in sexual intercourse with a 5 to 6 year old prepubescent girl. AOL referred the emails and videos via a cyber tip line to the National Center for Missing and Exploited Children (NCMEC), which forwarded them under 42 U.S.C. § 5773(b)(1)(P) to the Iowa Internet Crimes Against Children (ICAC) Task Force. The Black Hawk County Sheriff's Department subsequently obtained a search warrant for Sampson's residence on the basis of the intercepted emails and videos.

Law enforcement officers executed the search warrant on March 25, 2008. They found and seized several computers and one shotgun from the basement room where Sampson resided. Subsequent forensic analysis of the computers revealed that one contained 29 digital images of child pornography saved in the cache folder of a program used to upload images to the Internet. Nine of the images depicted adults penetrating pubescent or prepubescent children. During interviews with investigators, Sampson admitted that the email address from which the video had been sent was his. Although he admitted to having received, saved, and watched the video, he maintained that he had not emailed it, but had instead deleted it after discovering that it contained child pornography.

Sampson also admitted to having used a peer to peer file sharing program to search for "teen porn[ography]" and to having used an instant messaging program to send digital images from his residence in Iowa to a woman in Missouri. That woman later admitted to investigators that she had received images from Sampson, one of which depicted adults engaged in sex acts with a prepubescent female child.

Investigators confirmed that the picture was stored on her computer and that it matched one of those found on Sampson's.

Sampson was indicted on four counts. Two charged him with knowingly transporting and attempting to transport child pornography, in violation of 18 U.S.C. § 2252A(a)(1) and (b)(1). The third count alleged that he had knowingly possessed and attempted to possess child pornography, in violation of § 2252A(a)(5)(B) and (b)(2). And the fourth charged him with possessing a firearm after having been convicted of a felony, in violation of 18 U.S.C. § 922(g)(1).

On January 13, 2009 Sampson reached a plea agreement with the government and entered a guilty plea to one of the transportation of child pornography counts and to the felon in possession of a firearm count. The remaining counts were subsequently dismissed. The district court accepted Sampson's pleas on January 28, 2009, but he moved to withdraw them on May 11, 2009 after new counsel had been appointed. The magistrate judge[2] held a hearing on the motion and recommended that it be denied. The district court adopted his report and recommendation.

At the sentencing hearing Sampson objected to the three level upward adjustment sought by the government under U.S.S.G. § 2G2.2(b)(7). He argued that the video which he had emailed twice should be counted only once under § 2G2.2(b)(7). He also objected to a base offense level of 24 for his felon in possession conviction on the ground that his 2004 Illinois conviction for indecent solicitation of a child was not a crime of violence under U.S.S.G. § 2K2.1(a)(2). The district court overruled both objections. It calculated the advisory sentencing guideline range at 188 to 235 months based on a combined offense level of 35 and criminal history II, and it then sentenced Sampson to 188 months.

---

[2]The Honorable Jon S. Scoles, United States Magistrate Judge for the Northern District of Iowa.

II.

A.

Sampson appeals the denial of his motion to withdraw his guilty plea to felon in possession of a firearm.[3] At the hearing on his motion Sampson contended that his plea to that count was coerced, that he was actually innocent of it, and that he only pled guilty because he believed he could not otherwise obtain a plea agreement. The magistrate judge rejected those arguments, concluding that Sampson failed to offer any evidence to support his claim of innocence and that his testimony in support of the motion was in direct contradiction to the sworn testimony offered in support of his guilty plea. The district court adopted the report and recommendation and denied Sampson's motion to withdraw. On appeal Sampson maintains his innocence and his contention that his plea was coerced.

Our review of the denial of a motion to withdraw is for an abuse of discretion, while we consider de novo the mixed legal and factual question of whether a plea was knowingly and voluntarily made. United States v. Gray, 152 F.3d 816, 819 (8th Cir. 1998). Rule 11(d)(2)(B) of the Federal Rules of Criminal Procedure allows a defendant to withdraw a plea of guilty before sentencing if "the defendant can show a fair and just reason for requesting the withdrawal." Other relevant factors include "whether the defendant has asserted his innocence to the charge, the length of time between the plea of guilty and the motion to withdraw, and whether the government will be prejudiced by withdrawal." United States v. Austin, 413 F.3d 856, 857 (8th Cir. 2005). A court need not consider all these factors if there was not a fair and just reason for withdrawing the plea. United States v. Nichols, 986 F.2d 1199, 1201 (8th Cir. 1993).

---

[3]Sampson does not appeal the district court's denial of the motion in respect to the transportation of child pornography count.

After careful review of the record, we conclude that Sampson entered his guilty plea knowingly and voluntarily. Nothing in the record suggests coercion. At the plea hearing Sampson confirmed that his plea was voluntarily made and that he understood his rights as well as the consequences of entering a guilty plea. He confirmed that his attorney had reviewed the plea agreement with him in detail, that he understood its terms, and that the signature on the agreement and the initials appearing adjacent to each paragraph were his own. He admitted the factual allegations necessary for conviction: that he had been convicted of a crime punishable by more than 1 year imprisonment, that thereafter he knowingly possessed a firearm, and that the firearm had been transported across a state line. See § 922(g)(1).

Sampson contends that the chance of losing the opportunity to obtain a plea agreement caused him to confess his guilt despite being actually innocent. Yet, both before the district court and now on appeal he has not provided any evidence to support his claim of innocence. Sampson's conclusory argument simply does not satisfy his burden of showing a fair and just reason for "permit[ting] a withdrawal of what he had solemnly made under oath." See United States v. Smith, 422 F.3d 715, 723 (8th Cir. 2005).

Furthermore, his contention that the plea agreement was a contract of adhesion is not supported by the record. The plea agreement that Sampson signed was not the first offered to him, and it included language that had been stricken by hand and initialed by him. We rejected an argument similar to Sampson's in United States v. McClure, 338 F.3d 847 (8th Cir. 2003), and the rationale of that case applies with equal force here. Sampson's plea agreement was not a contract of adhesion because "[he] did not have to enter into [it]. [He] was free to holdout for better terms and could have proceeded to trial or pled guilty without an agreement." Id. at 850.

We conclude that the district court did not abuse its discretion in finding that Sampson had provided no fair and just reason for requesting the withdrawal of his guilty plea.

B.

Sampson next contests the district court's application of U.S.S.G. § 2G2.2(b)(7), which sets sentencing enhancements based upon the number of images involved in the trafficking or possession of material involving the sexual exploitation of a minor. Paragraph (B) of § 2G2.2(b)(7) calls for a three level enhancement "[i]f the offense involved . . . at least 150 images, but fewer than 300." Unless substantially longer than five minutes, "[e]ach video, video-clip, movie, or similar recording shall be considered to have 75 images." § 2G2.2 cmt. n.4(B)(ii).

The district court applied a three level enhancement under § 2G2.2(b)(7)(B) because it found that Sampson's offense involved 179 images. It based that total on 29 photographs found on Sampson's computer and the video which had been sent from Sampson's account. The court counted the video twice, assigning 75 images for each time it had been emailed. Sampson does not object to the court's counting of the photographs, but argues that the video should have been counted only once.

We review the district court's application of the sentencing guidelines de novo. United States v. Mathijssen, 406 F.3d 496, 498 (8th Cir. 2005). Neither the text of the guideline nor the relevant commentary clarify precisely how duplicate images and videos are to be scored. See § 2G2.2(b)(7); id. at cmt. n.4(B)(i) ("Each photograph . . . shall be considered to be one image."); id. at cmt. n.4(B)(ii) ("Each video . . . shall be considered to have 75 images."). And as the parties and the district court have acknowledged, there is a dearth of case law discussing the issue.

Although the Third Circuit has observed in dicta that duplicate images are not to be counted under U.S.S.G. § 2G2.4(b)(5) (the predecessor to § 2G2.2(b)(7)), it did so without analysis and in the context of a child pornography possession case. See United States v. Goff, 501 F.3d 250, 255 n.9 (3d Cir. 2007); see also United States v. Lacey, 569 F.3d 319, 322 & n.1 (7th Cir. 2009) (observing in a child pornography possession case that the district court had excluded duplicate images under § 2G2.2(b)(7), but not addressing the propriety of that interpretation). Sampson, in

contrast, was convicted for transporting a video depicting child pornography multiple times (not for possessing multiple copies of the video).

A decision of the D.C. Circuit underscores the significance of the distinction between the possession of multiple copies of an image of child pornography and the distribution of multiple copies of such an image. In United States v. Sullivan, 451 F.3d 884 (D.C. Cir. 2006), that court considered the constitutional authority of Congress to enact 18 U.S.C. § 2252A as part of the Child Pornography Prevention Act of 1996 (CPPA), Pub. L. No. 104-208, 110 Stat. 3009 (1996). Although the court did not address the precise issue of counting duplicate images under § 2G2.2(b)(7), its discussion of the "viral" nature of digital forms of child pornography is nonetheless instructive.

> In contrast to wheat or marijuana, the supply of electronic images of child pornography has a viral character: every time one user downloads an image, he simultaneously produces a duplicate version of that image. Transfers of wheat or marijuana merely subdivide an existing cache; transfers of digital pornography, on the other hand, multiply the existing supply of the commodity, so that even if the initial possessor's holdings are destroyed, subsequent possessors may further propagate the images. This means that each new possessor increases the available supply of pornographic images.

Sullivan, 451 F.3d at 891.

The viral nature of digital forms of child pornography does not depend upon the uniqueness of a photograph or video. The distribution of duplicate images increases the supply and availability of child pornography just as the distribution of unique images does. Both types of distribution compound the effect of an original act of sexual exploitation of a child by increasing the quantity and thus the availability of the image. See 110 Stat. at 3009-26 ("[C]hild pornography permanently records the victim's abuse, and its continued existence causes the child victims of sexual abuse continuing harm by haunting those children in future years.").

The legislative history underlying the enactment of § 2G2.2(b)(7) reflects such concerns. The sentencing enhancement in § 2G2.2(b)(7) was originally enacted by the Prosecutorial Remedies and Tools Against the Exploitation of Children Today (PROTECT) Act of 2003, Pub. L. No. 108-21, 117 Stat. 650 (codified as amended in scattered sections of 18 and 42 U.S.C.). The PROTECT Act grew out of Congress's finding that "'[c]hild pornography stimulates the sexual appetites and encourages the activities of child molesters and pedophiles, who use it to feed their sexual fantasies . . . [and] to convince potential victims that the depicted sexual activity is normal.'" S. Rep. No. 108-2, at 3 (2003) (quoting S. Rep. No. 104-358, at 12–14 (1996)). That concern is just as clearly implicated by a duplicate image as it is by the original. The PROTECT Act was enacted to bolster and expand protections created by the CPPA, see id. at 1–3, the avowed purpose of which was to "encourage the possessors of [child pornography] to rid themselves of or destroy the material, thereby helping to . . . eliminate the market for the sexual exploitative use of children," 110 Stat. at 3009-27.

We conclude that § 2G2.2(b)(7) means what a plain reading of its application note indicates: "Each video" and "[e]ach photograph" which a defendant distributes is to be counted under § 2G2.2(b)(7), regardless of whether or not it is a duplicate. § 2G2.2 cmt. n.4(B) (emphases added). To conclude otherwise would mean that a defendant who distributes a single image would incur the same enhancement under § 2G2.2(b)(7) as one who distributes the same image one thousand times, despite the vast disparity in resulting harm.

Accordingly, the district court did not err in concluding that the video that had been emailed twice should be counted that way under § 2G2.2(b)(7).

C.

Sampson contends that the district court erred in its application of U.S.S.G. § 2K2.1(a)(2), which provides for a base offense level of 24 for possession of a firearm by a felon if the defendant was previously convicted of two felony "crime[s] of

violence." The district court applied § 2K2.1(a)(2) on the basis of Sampson's prior state court convictions for second degree burglary and indecent solicitation of a child. Sampson concedes that the burglary conviction is a crime of violence, but argues that the indecent solicitation conviction is not. Our review of that question is de novo. United States v. Hennecke, 590 F.3d 619, 620 (8th Cir. 2010).

In construing the term "crime of violence" under § 2K2.1(a)(2), we look to the definition provided by U.S.S.G. § 4B1.2(a), see § 2K2.1(a)(2) cmt. n.1, as well as to construction of the analogous term "violent felony" under 18 U.S.C. § 924(e)(2)(B), see United States v. Clinkscale, 559 F.3d 815, 817 (8th Cir. 2009). Section 4B1.2(a) defines a "crime of violence" as

> any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that --
>
> (1)    has as an element the use, attempted use, or threatened use of physical force against the person of another, or
>
> (2)    is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

In Johnson v. United States, 130 S.Ct. 1265 (2010), the Supreme Court clarified that an offense is not a crime of violence within the meaning of subsection one unless it "'has as an element the use, attempted use, or threatened use of'" not just physical force, but violent physical force, "'against the person of another.'" See id. at 1268, 1271 (quoting § 924(e)(2)(B) and construing "violent felony"); United States v. Brown, 598 F.3d 1013, 1017 (8th Cir. 2010). The government does not claim that Sampson's offense, indecent solicitation of a child, qualifies as a crime of violence under subsection one. We also observe that the Illinois statute would not in every case require proof of the use, attempted use, or threatened use of violent physical force against another. See 720 Ill. Comp. Stat. §§ 5/11-6(a), 5/12-13, 5/12-16. Johnson has made it clear that such an offense is not a crime of violence under subsection one.

In Begay v. United States, 553 U.S. 137 (2008), the Supreme Court set out the analysis courts should use to determine whether a nonlisted offense—that is, one that does not "'involve[] [the] use of explosives'" and is not "'burglary, arson, or extortion,'" id. at 140 (quoting § 924(e)(2)(B))—qualifies as a crime of violence under the "otherwise" clause in subsection two. An offense "otherwise involves conduct that presents a serious potential risk of physical injury to another," id., only if it is "roughly similar, in kind as well as in degree of risk posed, to the examples [the listed offenses] themselves," see id. at 143 (construing "violent felony" under § 924(e)(2)(B)). An offense that is similar in kind to the listed offenses "should typically involve 'purposeful, violent, and aggressive conduct.'" United States v. Williams, 537 F.3d 969, 972 (8th Cir. 2008) (quoting Begay, 553 U.S. at 144–45).

To determine whether the offense for which Sampson was convicted qualifies as a crime of violence, we restrict our analysis to the offense's statutory definition and disregard the factual underpinnings of his conviction. See Begay, 553 U.S. at 141 (citing Taylor v. United States, 495 U.S. 575, 602 (1990)). To identify the precise statute and subsection to which Sampson pled guilty, however, "we may look to 'the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or to some comparable judicial record of this information.'" Williams, 537 F.3d at 973 (quoting Shepard v. United States, 544 U.S. 13, 26 (2005) (plurality opinion)).

Sampson pled guilty to violating 720 Ill. Comp. Stat. § 5/11-6(a), which defines indecent solicitation of a child as follows:

> A person of the age of 17 years and upwards commits the offense of indecent solicitation of a child if the person, with the intent that the offense of . . . criminal sexual assault . . . or aggravated criminal sexual abuse be committed, knowingly solicits a child or one whom he or she believes to be a child to perform an act of sexual penetration or sexual conduct as defined in Section 12-12 of this Code.

The contradictory information provided by Sampson's indictment, plea, and judgment of conviction prevents us from determining whether he was convicted for class 2 (criminal sexual assault) or class 3 (aggravated criminal sexual abuse) indecent solicitation of a child. See § 5/11-6(c) (differentiating between class 2 and class 3 violations); § 5/12-13 (defining criminal sexual assault); § 5/12-16 (defining aggravated criminal sexual abuse).

The government contends that we need not decide whether Sampson's Illinois offense is a crime of violence because any error in applying § 2K2.1(a)(2) would be harmless. It first points out that the district court thoroughly explained at sentencing why it considered 188 months to be the appropriate sentence for Sampson whether or not § 2K2.1(a)(2) applied. Cf. United States v. Davis, 583 F.3d 1081, 1094–95 (8th Cir. 2009) (declining to decide whether the Iowa crime of indecent contact with a child by solicitation constituted a crime of violence because any error would be harmless).

At the sentencing hearing the district court considered in detail how the 18 U.S.C. § 3553(a) factors related to Sampson. It went over the facts and circumstances surrounding Sampson's offense as well as his characteristics. It observed that he had transported and attempted to transport child pornography less than a year after being discharged from probation for his Illinois conviction for indecent solicitation of a child. It found that Sampson had shown neither remorse nor acceptance of responsibility for that offense or for his current one. In addition he had "at times be[en] just flat-out untruthful under oath to the [c]ourt." The court also concluded that the sentence imposed represented just punishment and that Sampson was a continuing threat to the public since despite his "continuing interest in children as sex objects," he "expressed no interest in [treatment] . . . because he does not see his behavior as deviant."

The government also urges that Sampson's advisory guideline range was not affected by the application of the § 2K2.1(a)(2) crime of violence provision. Before applying that provision the district court observed that "the scoring of count 4 [felon

-11-

in possession] has no impact on the computation of the advisory guideline range, because count 2 [transportation of child pornography] controls the offense level." Whether or not § 2K2.1(a)(2) was applied, Sampson's offense level for the felon in possession count would have remained at least nine levels lower than that for his transportation of child pornography offense. The total offense level is not affected by an adjusted offense level for any count which is at least nine levels lower than the adjusted offense level for the defendant's most serious count. See U.S.S.G. § 3D1.4(c).

We conclude that we need not reach the issue of whether the Illinois crime of indecent solicitation of a child is a crime of violence. Any error in the district court's conclusion on that issue was harmless in the circumstances of this case. The district court clearly explained and adequately justified its intention to impose a 188 month sentence without regard to that conclusion. Our review of sentences imposed under the advisory guidelines is for an abuse of discretion. Gall v. United States, 552 U.S 38, 51 (2007). We find none.[4]

III.

Accordingly, the judgment of the district court is affirmed.

_____

---

[4]Sampson does not contend that his sentence is substantively unreasonable.

-12-