*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 11a0061p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

UNITED STATES OF AMERICA,
                              *Plaintiff-Appellee,*

                v.                                          No. 09-4011

TIMOTHY MCNERNEY,
                              *Defendant-Appellant.*

_____

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 08-00511-001—Dan A. Polster, District Judge.

Argued: January 11, 2011

Decided and Filed: March 1, 2011

Before: SUHRHEINRICH, CLAY, and ROGERS, Circuit Judges.

_____

## COUNSEL

**ARGUED:** Darin G. Thompson, FEDERAL PUBLIC DEFENDER'S OFFICE, Cleveland, Ohio, for Appellant. Carol M. Skutnik, ASSISTANT UNITED STATES ATTORNEY, Cleveland, Ohio, for Appellee. **ON BRIEF:** Darin G. Thompson, FEDERAL PUBLIC DEFENDER'S OFFICE, Cleveland, Ohio, for Appellant. Carol M. Skutnik, ASSISTANT UNITED STATES ATTORNEY, Cleveland, Ohio, for Appellee.

        CLAY, J., delivered the opinion of the court, in which SUHRHEINRICH, J., joined. ROGERS, J. (p. 13), delivered a separate concurring opinion.

_____

## OPINION

_____

        CLAY, Circuit Judge.  Defendant Timothy McNerney appeals his sentence of 120 months of incarceration, followed by 10 years of supervised release.  The district court sentenced Defendant on August 12, 2009 following Defendant's guilty plea to one

1

count of receiving and distributing visual depictions of real minors engaged in sexually explicit conduct in violation of 18 U.S.C. § 2252(a)(2), and one count of possession of child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B).

For the reasons stated below, we **AFFIRM** the district court's decision.

## BACKGROUND

On February 20, 2007, federal agents obtained a valid search warrant to search Defendant Timothy McNerney's house based on a federal task force agent's determination, through an internet search, that Defendant was sharing 166 files depicting child pornography online via a peer-to-peer file-sharing program. Pursuant to this valid search warrant, federal agents searched Defendant's house, and seized Defendant's computer. A forensic analysis of Defendant's computer revealed that the file-sharing program was installed on Defendant's computer, and that numerous images of child pornography were located in the shared folder, allowing other users of the file-sharing program to access them. The agents also found that Defendant had backed up his files on a second hard drive, creating an identical second copy of all of the data contained on his computer, including the images of child pornography.

A federal grand jury indicted Defendant on December 10, 2008, for receiving and distributing visual depictions of real minors engaged in sexually explicit conduct in violation of 18 U.S.C. § 2252(a)(2), and possession of child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B). On April 22, 2009, Defendant pled guilty to both counts of the indictment. On August 13, 2009, the district court held a sentencing hearing, and sentenced Defendant to an 120 month term of imprisonment, followed by 10 years of supervised release.

At the sentencing hearing the district court calculated Defendant's total offense level at 30, and Defendant's criminal history category at I, producing an advisory sentence range of 97 to 121 months. In calculating Defendant's offense level, the district court began with a base offense level of 22, which both parties agreed was correct. The district court proceeded to add the following enhancements: a two level enhancement for

images of prepubescent minors pursuant to U.S.S.G § 2G2.2(ii); a two level enhancement for transferring materials over the internet pursuant to U.S.S.G § 2G2.2(b)(3)(F); a two level enhancement for using a computer in the crime  pursuant to U.S.S.G § 2G2.2(b)(6); and a five level enhancement for having more than 600 images  pursuant to U.S.S.G § 2G2.2(b)(7), producing a total offense level of 33.  The district court then adjusted Defendant's offense level for acceptance of responsibility, placing Defendant's final offense level at 30.

Regarding its computation of the number of images Defendant possessed, based on which the district court enhanced Defendant's offense level by five points, and which is disputed in this appeal, the district court stated:

> [T]here's a dispute about the number of images.[1]  The Probation Department has recommended an additional five levels based on the finding that there are more than 600 images, specifically 766.  The [D]efendant has argued that there's double counting because there are multiple copies of the same image and, therefore, those images should be counted only once in reaching the total . . . . Mr. McNerney had two hard drives and many of the images are found on both hard drives . . . . [G]iven that as the government pointed out the computer automatically creates a mirror image of the first hard drive on the second hard drive, and so if hard drive number one is damaged or erased all the images would still exist on the backup hard drive in pristine form, and in my view then we have multiple images and it's not double counting because we've got two separate hard drives and this means if one were damaged, the [D]efendant would still have them on the other hard drive.  That's the only reason to have them on two hard drives, so I don't believe it's unfair or inappropriate to count, you know, we have image A on hard drive one and the same image is on hard drive two, we have two separate images and they could both be used and they are there in case one hard drive crashes.  So I don't believe we have double counting, and given that, there are more than 600 images in total and so the plus five applies.

(R. 30, Tr. of Sentencing Proceeding at 4-5.)

---

[1]Although the district court and the litigants are not clear on this point, thumbnail images are not counted separately for U.S.S.G. § 2G2.2(b)(7) purposes because thumbnails are not duplicate digital images.  Rather, thumbnails are simply previews of digital images that are viewable without opening the digital folder in which the digital images are contained.

Defendant objected to the district court's computation, and the five level
enhancement under U.S.S.G § 2G2.2(b)(7).  (*Id*. at 13-14.)  Defendant timely appealed
his sentence.

## DISCUSSION

### I.        Standard of Review

We review "*de novo* a district court's interpretation of the Sentencing
Guidelines." *United States v. Gibson*, 409 F.3d 325, 338 (6th Cir. 2005).

### II.       Analysis

Defendant challenges the district court's application of a five level enhancement
to his offense level for possessing 600 or more images, pursuant to U.S.S.G
§ 2G2.2(b)(7).  Section 2G2.2(b)(7) of the Sentencing Guidelines provides for an
increase in a defendant's offense level for child pornography based on the number of
images possessed as follows: "If the offense involved – (A) at least 10 images, but fewer
than 150, increase by 2 levels; (B) at least 150 images, but fewer than 300, increase by
3 levels; (C) at least 300 images, but fewer than 600, increase by 4 levels; and (D) 600
or more images, increase by 5 levels."

Defendant contends that only unique digital images, not duplicate digital
images,[2] should be counted in computing an enhancement under this provision of the
Sentencing Guidelines.  This particular interpretive issue is a question of first impression
for this Court.  There is also a dearth of case law on this question in other circuits.[3]

---

[2]We use the term "digital image" to refer to any image saved on a digital medium, including, by
way of example, a computer hard drive, a camera memory card, a flash drive, or the internet.
We use the term "duplicate digital image" to refer to an identical copy of a digital image.
We use the term "unique digital image" to refer to a digital image of which there are no
duplicates.
We use the term "hard copy image" to refer to any printed image, including, by way of example,
a printed photograph, a picture in a magazine or book, or a videotape.
We use the term "duplicate hard copy image" to refer to an identical copy of a hard copy image.
We use the term "unique hard copy image" to refer to a hard copy image of which there are no
duplicates.

[3]Three cases have raised the issue at the federal appellate level, only one of which analyzed
whether duplicate digital images are counted for U.S.S.G. § 2G2.2(b)(7) purposes. *See United States v.
Sampson*, 606 F.3d 505 (8th Cir. 2010)*; United States v. Havens*, 331 F. App'x 280, 282 (5th Cir. 2009)

### A.     History of § 2G2.2

As noted by several of our sister circuits, Congress has taken an active role in creating the sentencing scheme for child pornography offenses. *See, e.g., United States v. Grober*, 624 F.3d 592, 608 (3d Cir. 2010); *United States v. Dorvee*, 604 F.3d 84, 95 (2d Cir. 2010). The Child Pornography Sentencing Guidelines are "fundamentally different from most . . . . Sentencing Guidelines are typically developed by the Sentencing Commission using an empirical approach based on data about past sentencing policies." *Dorvee*, 604 F.3d at 95 (citing *Rita v. United States*, 551 U.S. 338, 349 (2007)). However, "the Commission did not use this empirical approach in formulating the Guidelines for child pornography." *Id*.

The Child Pornography Sentencing Guidelines "have been substantively amended nine times since 1987." *Grober*, 624 F.3d at 604. As Congress has placed a "laser-like focus on the child pornography Guidelines, particularly in the last several years," *id*., the Sentencing Commission's amendments to the Child Pornography Guidelines have often been at Congress' behest.

In its report entitled, "The History of the Child Pornography Guidelines," issued in October 2009, the United States Sentencing Commission explained that "Congress has been particularly active over the last decade creating new offenses, increasing penalties, and issuing directives to the [Sentencing] Commission regarding child pornography offenses. Indeed, in 2008 [alone] the 110th Congress passed three new laws amending child pornography statutes." *History of the Child Pornography Guidelines*, Oct.2009, at 1, available at http://www.ussc.gov/Research/Research_Projects/Sex_Offenses/ 20091030_History_Child_Pornography_Guidelines.pdf (last visited Feb. 8, 2011). Moreover, Congress' child pornography legislation initiatives have been unambiguously motivated by a desire to cast a wider criminal net, and impose harsher punishments for child pornography offenses. As the Second Circuit stated, "at the direction of Congress,

---

(summarily dismissing the defendant's argument that "there was evidence at trial that some of the images he possessed were duplicates."); *United States v. Goff*, 501 F.3d 250, 255 n.9 (3d Cir. 2007) (allowing the prosecution in that case to discount duplicate images for U.S.S.G. § 2G2.2(b)(7) purposes, although neither explicitly approving of this interpretation nor analyzing the Guidelines provision).

the Sentencing Commission has amended the Guidelines under § 2G2.2 several times since their introduction in 1987, each time recommending harsher penalties." *Dorvee*, 604 F.3d at 95; *see also Grober*, 624 F.3d at 604-05 (stating that "[i]t is clear . . . that [in its several amendments to the Guidelines increasing penalties for child pornography] the Commission was constantly reacting to Congress's (sic.) repeated directives, and the penalties for child pornography offenses that were steadily, and often dramatically, increasing.").

In its recent report, the Sentencing Commission elaborated, "Congress has demonstrated its continued interest in deterring and punishing child pornography offenses, prompting the [Sentencing] Commission to respond to multiple public laws that created new child pornography offenses, increased criminal penalties, directly (and uniquely) amended the child pornography guidelines, and required the [Sentencing] Commission to consider offender and offense characteristics for the child pornography guidelines." *History of the Child Pornography Guidelines, supra*, at 54. Specifically,

> [f]or more than 30 years, and particularly in recent years, Congress has focused attention on the scope of child pornography offenses and the severity of penalties for child pornography offenders. Through creating new offenses, enacting new mandatory minimums, increasing statutory maximums, and providing directives to the [Sentencing] Commission, Congress has repeatedly expressed its will regarding appropriate penalties for child pornography offenders. Congress has specifically expressed an intent to raise penalties associated with certain child pornography offenses several times through directives to the Commission and statutory changes aimed at increasing the guideline penalties and reducing the incidence of downward departures for such offenses.

*Id.* at 6. *See also United States v. Gellatly*, 2009 U.S. Dist. LEXIS 2693, at *15-24 (D. Neb. Jan. 5, 2009) (summarizing the history of child pornography legislation).

The Guidelines provision at issue in this case, § 2G2.2(b)(7), providing for a sentence enhancement of between two and five levels based on the number of images involved in the crime, was the direct product of one such Congressional initiative. Congress enacted the Prosecutorial Remedies and Other Tools to End the Exploitation of Children Today Act ("PROTECT Act"), which "made several changes with respect

to the child pornography guidelines and contained provisions by which Congress for the first and only time to date, directly amended the guidelines." *Id.* at 38. "The PROTECT Act of 2003 instructed the Commission to amend § 2G2.2 to include the number-of-images enhancements, which are currently codified at § 2G2.2(b)(7) and range from two levels to five levels." *Dorvee*, 604 F.3d at 95 n.6. Thus, "[i]n 2003, pursuant to the Prosecutorial Remedies and Other Tools to end the Exploitation of Children Today Act ("PROTECT Act"), the Commission again revised the guidelines covering child pornography offenses," and added the quantity of images enhancement mandated by the PROTECT Act. *History of the Child Pornography Guidelines, supra*, at 38.

Congress, in repeatedly enacting legislation regarding child pornography, "demonstrated its continued interest in deterring and punishing child pornography offenses." *Id.* at 54. As one court explained,

> [t]he clear focus of [the child pornography] legislation and concomitant Guidelines revision is on the patent evils of child pornography and the new dimension that computer technology adds to those evils. In particular, the amendments to the Guidelines reflect Congressional concerns that pedophiles, including those who use the Internet, are using child pornographic and obscene material to desensitize children to sexual activity, to convince children that sexual activity involving children is normal, and to entice children to engage in sexual activity.

*Gellatly*, 2009 U.S. Dist. LEXIS 2693, at * 24 (internal quotations and citations omitted). Simply put, Congress sought to protect "[t]he primary victims of the crime of possession of child pornography," namely, "the exploited children." *Id.*; *see also Connection Distrib. Co. v. Holder*, 557 F.3d 321, 324 (6th Cir. 2009) (en banc) (stating that in enacting numerous pieces of legislation regarding child pornography, "Congress [was] attempt[ing] to prevent the exploitation of children through pornography.").

Despite Congress' significant purpose in prohibiting the dissemination of child pornography, some courts and commentators have questioned the wisdom of the congressionally-directed Child Pornography Sentencing Guideline because they were the product of Congressional mandate rather than the Commission's preferred systematic, empirical approach. *See, e.g., Grober*, 624 F.3d at 608 ("§ 2G2.2 was not

developed pursuant to the Commission's institutional role and based on empirical data and national experience, but instead was developed largely pursuant to congressional directives."); *Dorvee*, 604 F.3d at 95, 97 (stating that the § 2G2.2 Guidelines are "fundamentally different from most and that, unless applied with great care, can lead to unreasonable sentences," and describing § 2G2.2 as irrational); *Gellatly*, 2009 U.S. Dist. LEXIS 2693, at *10 (stating that in areas such as child pornography, "[w]hen Guidelines are not the result of the Commission's exercise of its characteristic institutional role, such as when they are not based on an empirical approach, but are instead keyed to or guided by statutory directives . . . the Guideline ranges of imprisonment for those crimes are a less reliable appraisal of a fair sentence."); (R. 21-3, Troy Stabenow, *Deconstructing the Myth of Careful Study: A Primer on the Flawed Progression of the Child Pornography Guidelines* at 3 (explaining that "the changes to the child pornography guidelines are not the product of an empirically demonstrated need for consistently tougher sentencing. Instead, these changes are largely the consequence of numerous morality earmarks, slipped into larger bills over the last fifteen years, often without notice, debate, or empirical study of any kind.").) However, the debate regarding the wisdom of congressionally-mandated enhancements notwithstanding, it is unquestionably Congress' constitutional prerogative to issue sentencing directives such as the sentencing enhancements for quantity of images at issue in this case.

It is axiomatic that "[i]n our system, so far as at least concerns the federal powers, defining crimes and fixing penalties are legislative . . . functions." *United States v. Evans*, 333 U.S. 483, 486 (1948). The Supreme Court has reiterated that "Congress, of course, has the power to fix the sentence for a federal crime." *Mistretta v. United States*, 488 U.S. 361, 364 (1989); *see also United States v. Evanouskas*, 386 F. App'x 882, 884 (11th Cir. 2010). Thus, "[n]othwithstanding the delegation of authority provided to the Commission in the [Sentencing Reform Act], Congress retained ultimate authority over the federal sentencing guidelines . . . . Congress [thus] retains the ability to influence federal sentencing policy by enacting directives to the Commission," *History of the Child Pornography Guidelines, supra*, at 5-6, "which the Commission is obliged to implement." *Grober*, F.3d at 608.

**B.        Interpretation of § 2G2.2(b)(7)**

The Guidelines provision at issue in the instant appeal is U.S.S.G § 2G2.2(b)(7). It provides for an increase in a defendant's offense level for child pornography based on the number of images possessed. Defendant challenges the application of the Guidelines to duplicate digital images. In his brief to this Court, Defendant admits that duplicate hard copy images are counted separately for § 2G2.2(b)(7) purposes. However, Defendant nevertheless argues that only unique digital images, not duplicate digital images, should be counted in determining a sentencing enhancement under this Guideline provision.

As discussed above, § 2G2.2(b)(7) was properly enacted pursuant to explicit congressional mandate, and congressional will should be considered in construing its parameters. In so doing, we note that congressional directives regarding sentencing for child pornography have consistently increased penalties. We further note that although Congress has explicitly expressed its desire to enhance punishments for child pornography offenses, Congress has not differentiated between digital images and hard copy images for the purposes of § 2G2.2(b)(7) image enumeration.

Section 2G2.2(b)(7) provides for enhancements to a defendant's sentence as follows: "If the offense involved – (A) at least 10 images, but fewer than 150, increase by 2 levels; (B) at least 150 images, but fewer than 300, increase by 3 levels; (C) at least 300 images, but fewer than 600, increase by 4 levels; and (D) 600 or more images, increase by 5 levels."

Like the congressional directive itself, the Application Note to § 2G2.2(b)(7) is similarly devoid of any indication that § 2G2.2(b)(7) differentiates between digital images and hard copy images.

Application of Subsection (b)(7) –

(A) Definition of "images" – "Images" means any visual depiction, as defined in 18 U.S.C. § 2256(5), that constitutes child pornography, as defined in 18 U.S.C. § 2256(5).

(B) Determining the number of images:– For purposes of determining the number of images under subsection (b)(7):

> (i) Each photograph, picture, computer or computer-generated image, or any similar visual depiction shall be considered one image. If the number of images substantially underrepresents the number of minors involved, an upward departure may be warranted.

U.S.S.G. § 2G2.2 Application Note 4. In defining the term "image," the Application Note refers only to "any visual depiction." This suggests that duplicate visual depictions, digital or otherwise, should each be counted separately for purposes of this enhancement.

Previous versions of the Child Pornography Sentencing Guidelines similarly treated digital images and hard copy images equivalently. The Commission's 2000 amendments to the Guidelines clarified that the enhancement then contained in § 2G2.4(b)(2) providing for "a two-level enhancement if the offense involved possession of ten or more items of child pornography," stated that a "computer file qualifies as an item for purposes of the enhancement," thus providing for identical treatment of digital images and hard copy images. (R. 21-3, Troy Stabenow, *Deconstructing the Myth of Careful Study: A Primer on the Flawed Progression of the Child Pornography Guidelines* at 18.)

Defendant nevertheless attempts to distinguish duplicate hard copy images from duplicate digital images, stating: "the rationale underlying the increase in levels based upon the number of images is obvious: each picture represents a separate victimization of those pictured." (Br. of Appellant at 9.) Defendant maintains, however, that duplicate digital images, such as those contained on Defendant's second hard drive, are not "multiple victimizations." (*Id.*) Defendant argues that, as distinguished from duplicate digital images, "there are practical reasons why [duplicate] hard copies could be treated [as multiple images]. Most obviously, because making [duplicate] hard copies requires more than a minimal amount of effort, and having [duplicate] hard copies makes it possible to potentially distribute them." (*Id.*)

Defendant's argument implies that digital images and hard copy images are disseminated by dissimilar methods of distribution. In this vein, Defendant contends that it is significant that dissemination of hard copy images requires duplication. According to Defendant's reasoning, duplicate hard copy images should be counted separately pursuant to § 2G2.2(b)(7) inasmuch as the duplicates themselves are necessary for dissemination. However, this rationale does not similarly justify counting duplicate digital images separately.

Digital distribution of child pornography is facilitated by file-sharing programs that allow users to access other users' computers to download shared digital images. Once an individual uploads a single digital image onto the file-sharing platform, an infinite number of users can access that digital image. Thus, possessing a duplicate digital image does not affect the quantity of child pornography available for digital distribution.

However, although the rationale for individual counting of duplicate hard copy images does not extend to duplicate digital images, we remain mindful that the Child Pornography Guidelines contain no indication that either Congress or the Sentencing Commission intended to differentiate between hard copy images and digital images. *See* U.S.S.G. § 2G2.2 Application Note 4.[4]

Moreover, it is significant that § 2G2.2(b)(7) applies to all of the following child pornography crimes: trafficking in material involving the sexual exploitation of a minor;

---

[4]The recent Eighth Circuit case *United States v. Sampson*, 606 F.3d 505 (8th Cir. 2010), is the only case on the circuit level that we have identified which discusses whether duplicate digital images should be counted for purposes of a § 2G2.2(b)(7) sentence enhancement. In *Sampson* the Eighth Circuit held that § 2G2.2(b)(7) does not include a uniqueness requirement for counting digital images. The Eighth Circuit maintained that possessing duplicate digital images increases the supply of digital child pornography, and therefore, duplicate digital images should be counted separately for purposes of a § 2G2.2(b)(7) enhancement. *See id*. at 510.

However, although we agree with the Eighth Circuit's holding in *Sampson* that duplicate digital images should be counted for purposes of a § 2G2.2(b)(7) sentence enhancement, we disagree with its reasoning to the extent that it is premised on a misunderstanding of the methods used to distribute digital images of child pornography. Possessing duplicate digital images does not affect the supply of digital child pornography. An individual possessing a unique digital image can disseminate that single image as widely as an individual possessing duplicate digital images. Once an individual uploads a digital image, an infinite number of people can download that single digital image. Therefore, possessing duplicate digital images does not increase an individual's capacity to facilitate wide dissemination of that digital image.

receiving, transporting, shipping, soliciting, or advertising material involving the sexual exploitation of a minor; possessing material involving the sexual exploitation of a minor with intent to traffic; and possessing material involving the sexual exploitation of a minor. *See* U.S.S.G. § 2G2.2(b)(7). The Guidelines provision applies equally to distribution and possession of child pornography. Its applicability is not dependent on a defendant's capacity to distribute child pornography. Thus, the rationale for differentiating between duplicate hard copy images and duplicate digital images based on differences in distribution methods is not persuasive.

Furthermore, it is undisputed that § 2G2.2(b)(7) applies to possession of duplicate hard copy images, and that even in cases of simple possession of child pornography we consider the quantity of images involved in the crime relevant to the measure of a defendant's culpability. *See United States v. Borho*, 485 F.3d 904, 910 (6th Cir. 2007); *see also United States v. Acosta*, 619 F.3d 956, 962 (8th Cir. 2010) (explaining that application of § 2G2.2(b)(7)(D) was proper in that case because "enhancing a defendant's sentence for the number of illegal items with which he was involved is a common practice throughout the Guidelines"). Therefore, neither application nor interpretation of § 2G2.2(b)(7) is tied to facilitation of distributing child pornography.

We therefore find that duplicate digital images, like duplicate hard copy images, should be counted separately for purposes of calculating a sentence enhancement pursuant to § 2G2.2(b)(7).

### III. Summary

The district court did not err by counting duplicate images in calculating Defendant's U.S.S.G. § 2G2.2(b)(7) enhancement based on the number of images he possessed.

### CONCLUSION

For the foregoing reasons, we **AFFIRM** the district court's decision.

————————————

**CONCURRENCE**

————————————

ROGERS, Circuit Judge, concurring. I concur in the result and in much of the reasoning of the majority opinion. Defendant makes the categorical argument in this case that identical duplicate images may not be counted separately for the purposes of calculating a sentencing enhancement pursuant to U.S.S.G. § 2G2.2(b)(7). For the reasons given in the majority opinion, we reject this argument.

To reject an argument that duplicate digital images are never to be counted separately, however, does not require us to hold that they are always to be counted separately. It is not necessary for us to decide that broader issue in order to resolve this appeal. Indeed, the Government concedes that certain "thumbnail" duplicate images need not be separately counted. In the instant case, the duplicate images were in a back-up hard drive, thus decreasing the chance that the images would be lost. In that sense, the copies increase the likelihood of further distribution. In such a context, the district court could properly count the digital images separately. It is not necessary for us to rule more broadly that duplicate images must be counted even when their presence on the computer does not increase the likelihood of further distribution.

As a related matter, I think it may be misleading to say that "[p]ossessing duplicate digital images does not affect the supply of digital child pornography" and that "possessing duplicate digital images does not increase an individual's capacity to facilitate wide dissemination of that digital image." Maj. Op. 12 n.4. While the individual's ultimate capacity to disseminate may be the same, the likelihood of dissemination is obviously greater in some cases than others. The present instance is a good example: the existence of a back-up hard drive increases the risk that the images will be preserved and later viewed by the user or someone else. Similarly, having duplicates in different folders versus the same folder, or in undeleted versus deleted status, can change the likelihood of dissemination.