**NOT RECOMMENDED FOR PUBLICATION**

File Name: 20a0101n.06

Case No. 19-5115

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

**FILED**

Feb 13, 2020
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE WESTERN DISTRICT OF |
| JAMES HOLLAND, JR., | ) | KENTUCKY |
| | ) | |
| Defendant-Appellant. | ) | |

BEFORE: SILER, GIBBONS, and READLER, Circuit Judges.

**CHAD A. READLER, Circuit Judge.** James Holland pleaded guilty to possessing child pornography involving a minor under age twelve. The district court sentenced Holland to a term of 108 months imprisonment and imposed a lifetime term of supervised release. On appeal, Holland argues that his sentence, along with the conditions of his supervised release, are both procedurally and substantively unreasonable. Finding no basis to vacate Holland's sentence, we **AFFIRM**.

## I. BACKGROUND

By all accounts, James Holland for many years lived as a respected member of his Macon County, Tennessee community. A sixty-three-year-old father and grandfather, Holland was the sole operator of a small family business, as well as the caretaker of his family's farms. Holland's contributions to his community, however, masked his regrettable interest in possessing and

distributing child pornography. Holland was no run-of-the-mill offender. The images found on his computer and storage devices included some of the most disturbing imaginable.

Holland pleaded guilty to knowingly possessing child pornography, including pornographic images involving a minor who had not yet reached twelve years of age, in violation of 18 U.S.C. § 2252A(a)(5)(B) and 2252A(b)(2). As part of his plea, Holland admitted to the government's factual allegations, including an allegation that Holland's computer was running a "peer-to-peer" file-sharing program that was actively uploading child pornography files to the internet and that Holland possessed "thousands of images and videos of child pornography" on several devices. The most disturbing of these images depicted "babies, toddlers being sexually exploited" and "at least one video of a minor, prepubescent, who had her arms duct-taped to her legs" as she was raped. Holland also acknowledged that he understood the possible consequences of his plea, which included a maximum sentence of twenty years in prison, and an up to life term of supervised release.

The Probation Office reported that Holland's computer contained three videos, along with 1,927 images. Because a video is counted as the equivalent of seventy five images, U.S.S.G. § 2G2.2, cmt. n.6(B)(ii), Holland's total possession count amounted to 2,152 images. With respect to calculating Holland's recommended sentence, the Probation Office included a two-level enhancement because the offense involved the use of a computer, *see* U.S.S.G. § 2G2.2(b)(6), and a five-level "number-of-images" enhancement because the offense involved "600 or more images," *see* § 2G2.2(b)(7). Once all the sentencing calculations were tallied, the resulting advisory sentencing range was 108 to 135 months imprisonment and a period of supervised release ranging from five years to life.

Through a sentencing memorandum, Holland asked the district court to reject the Probation Office's sentencing recommendation and vary downward from the advisory sentencing range. Holland also objected to the determination that a five-level enhancement applied because he possessed "600 or more images," pursuant to § 2G2.2(b)(7). Holland contended that the government had not distinguished between unique images and duplicate images, such as thumbnails or files created by the operating system that the user would normally not access.

In response, the Probation Office, utilizing information provided by the government, advised that Holland's computer was found to contain 1,892 files of "Child Abuse Material." In addition, "[t]here were at least 16 (non-duplicate) videos found to contain known victims . . ." Revising its calculations, the Probation Office asserted that "[Holland was] responsible for 1,927 images and 16 videos (calculated under the Guidelines at 75 images each) for a total of 3,127 images containing child abuse material which were possessed and/or distributed by the use of a computer." During the ensuing sentencing hearing, Holland indicated that he had no objections to these revised calculations. The district court then accepted them as accurate.

Holland did, however, repeat his request for a downward variance. Holland asked the district court to sentence him to time served. Holland urged the district court to consider that, as a result of his arrest, he had already served about 120 days in jail, he had lost his reputation, and his family business had suffered. The government responded by noting the seriousness of Holland's offense and the systematic way with which Holland had indexed his collection of child pornography. This indexing, the government argued, showed that Holland wanted to be able to find specific images easily, showing a "true interest" in child pornography. It thus urged the district court to impose a sentence of 135 months, the upper end of the advisory sentencing range.

Taking up the parties' respective positions, the district court found that Holland had exhibited a "lack of contrition" on account of his "audacious request" that he be sentenced to time served. Nonetheless, the court sentenced Holland to 108 months imprisonment, the shortest sentence within the advisory sentencing range. It also imposed a lifetime term of supervised release, along with a host of mandatory, standard, and special conditions. Holland filed a timely appeal.

## II. ANALYSIS

Holland challenges his sentence (including the terms of supervised release) as both procedurally and substantively unreasonable. As to procedural reasonableness, Holland challenges a two-level enhancement he received for the use of a computer in the commission of his offense and a five-level enhancement for possessing 600 or more images of child pornography. Holland adds that his sentence was also substantively unreasonable due to the district court's rejection of his motion for a variance downward, which, says Holland, proves that the district court placed too much emphasis on the nature of his offense.

### A. Procedural Reasonableness

1. Because the proper calculation of the sentencing range under the Guidelines is a component of procedural reasonableness and is a precursor to a proper substantive reasonableness analysis, we will consider Holland's procedural challenges to his sentence first. *See Rosales-Mireles v. United States*, 138 S. Ct. 1897, 1910 (2018). For a sentence to be procedurally reasonable, the district court "must properly calculate the guidelines range, treat that range as advisory, consider the sentencing factors in 18 U.S.C. § 3553(a), refrain from considering impermissible factors, select the sentence based on facts that are not clearly erroneous, and

adequately explain why it chose the sentence." *United States v. Rayyan*, 885 F.3d 436, 440 (6th Cir. 2018) (citing *Gall v. United States*, 552 U.S. 38, 51 (2007)).

To our eye, the district court carefully considered the § 3553(a) factors, specifically citing many of them in explaining the rationale for Holland's sentence. Holland does not claim that the district court considered impermissible factors in determining his sentence. At most, he suggests that the district court may have considered the Guidelines to be mandatory—a reversible error if true. *United States v. Highgate*, 521 F.3d 590, 596 (6th Cir. 2008). But the record belies this contention. As the district court explained, its standard practice, which it followed here, is to begin at the bottom of the Guidelines range and looks for a reason to vary downward. It also explained to Holland the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005), the purpose of the Guidelines, and their advisory nature. Reviewing the district court's explanation for Holland's sentence at the low end of his Guidelines range, we see no reason to disturb that sentence.

2. Holland also challenges two sentencing enhancements imposed by the district court. But in some respects, those challenges come too late in the day. In the proceedings below, Holland did not object to the enhancement under § 2G2.2(b)(6) for using a computer to carry out his offense. Conversely, he did initially object to the applicability of the § 2G2.2(b)(7) enhancement on the grounds that the government had not distinguished between thumbnails or inaccessible images and unique images. But he ultimately did not renew that objection when the government revised its images calculation, under which Holland still qualified for the enhancement. The absence of objections below, says the government, means that Holland has waived his various enhancement-centered challenges.

Whether Holland "waived," or, alternatively, "forfeited" his rights has significantly different ramifications for him. A forfeiture occurs when a party fails to timely assert a right, whereas a waiver is the "intentional relinquishment or abandonment of a known right." *United States v. Olano*, 507 U.S. 725, 733 (1993) (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)). When a defendant has forfeited an argument, we review the claim for plain error. Fed. R. Crim. P. 52(b); *United States v. Vonner*, 516 F.3d 382, 385 (6th Cir. 2008) (en banc). But we generally decline to consider waived arguments on appeal. *United States v. Denkins*, 367 F.3d 537, 543–44 (6th Cir. 2004). Because Holland never objected to the enhancement for use of a computer, that omission is deemed a forfeiture, and we will thus review the claim for plain error.

How to treat the number-of-images enhancement, however, requires additional discussion. Where a defendant has "explicitly agreed" that a particular sentencing enhancement applies, he has waived any further challenge to that enhancement. *United States v. Mabee*, 765 F.3d 666, 671 (6th Cir. 2014) (quoting *United States v. Aparco–Centeno,* 280 F.3d 1084, 1088 (6th Cir. 2002)); *see also United States v. Hall*, 373 F. App'x 588, 592 (6th Cir. 2010). But that agreement must make clear that the defendant intends to abandon the argument. *See, e.g.*, *United States v. Malone*, 646 F. App'x 454, 458 (6th Cir. 2016) (stating that "[a] waiver occurs when a party deliberately raises an issue but later decides not to pursue it," but finding waiver only where the defendant explicitly withdrew an objection and confirmed the withdrawal at sentencing); *see also Denkins*, 367 F.3d at 544 (finding waiver of motion to withdraw plea where defendant withdrew his challenge to competency, the sole basis of the motion). To be sure, Holland did not ultimately object to this images-related enhancement. But, by the same token, nor did he give a "plain, positive concurrence" to its applicability. *See Mabee*, 765 F.3d at 672. That makes his failure to

object more akin to a forfeiture than a waiver, meaning we will also review that claim for plain error.

Yet that is not much for Holland to hang his hat on. Under plain error review, a defendant claiming an error in the proceedings below has the burden to show: "(1) [an] error, (2) that was obvious or clear, (3) that affected [the defendant's] substantial rights, and (4) that affected the fairness, integrity, or public reputation of the judicial proceedings." *See United States. v. Godofsky*, 943 F.3d 1011, 1030 (6th Cir. 2019) (quoting *Vonner*, 516 F.3d at 386). To succeed, then, Holland has to tag all four of the plain error bases. But he never makes it out of the batter's box, given his failure to show error below, much less an obvious one that affected his substantial rights.

3. As to the two-level enhancement for the use of a computer in carrying out his offense, the applicable Guideline instructs that "[i]f the offense involved the use of a computer or an interactive computer service for the possession, transmission, receipt, or distribution of the material, or for accessing with intent to view the material, increase [base offense level] by 2 levels." U.S.S.G. § 2G2.2(b)(6). And Holland, by admitting to the conduct alleged by the government, essentially conceded that his collection of child pornography was stored on a computer and several storage devices, and that at least some of those files were then uploaded to the internet by means of a computer using file-sharing software program.

Holland's response is somewhat hard to decipher. He seems to argue that because child pornography offenses are overwhelmingly carried out by use of a computer, the enhancement is therefore redundant and meaningless. He cites statistics to the effect that approximately ninety-six percent of all § 2G2.2 cases, ninety-five percent of all possession cases, and ninety-eight percent of all transportation/distribution cases involve the use of a computer. But we have already

rejected the idea that the use-of-a-computer enhancement should be ignored because it so frequently applies. *United States v. Walters*, 775 F.3d 778, 786 (6th Cir. 2015). Simply put, the argument that "'[c]omputers are present in every case' . . . [does] not begin to approach the showing necessary for a court to 'declin[e] to apply § 2G2.2 out of hand.'" *United States v. Bistline*, 720 F.3d 631, 633 (6th Cir. 2013) (quoting *United States v. Bistline*, 665 F.3d 758, 764 (6th Cir. 2012) (vacating a sentence imposed by a district court that had accepted a similar argument regarding this § 2G2.2 enhancement).

In fact, the enhancement in question was likely adopted precisely because computers are so often used in child pornography crimes. Computers dramatically increase the ease with which offenders can amass and index large collections of videos and images, and then easily share them. *Walters*, 775 F.3d at 787 ("There is a quantifiable cost to copying, sending, saving, and cataloging physical materials. No comparable cost exists when it comes to downloading, saving, and sharing electronic materials . . . ."). Viewing the enhancement through this lens, the prevalence of computers in the commission of these offenses, far from undermining the enhancement, is its very *raison d'etre*. We therefore reject Holland's challenge to the § 2G2.2(b)(6) enhancement.

4. Under the same plain error standard, Holland's challenge to the applicability of the number-of-images enhancement in § 2G2.2(b)(7) fares no better. As an initial matter, Holland's argument that the government failed to distinguish between unique and duplicate images is a distinction without a difference. Duplicate digital images are counted separately for purposes of the § 2G2.2(b)(7) enhancement. *United States v. McNerney*, 636 F.3d 772, 780 (6th Cir. 2011).

Yes, as Holland notes, *McNerney* says certain thumbnail images need not be included in the calculation, since they are previews of images rather than duplicates. *Id*. at 774 n.1. Holland, however, did not object at sentencing to the number of images counted as part of his collection,

nor did he present evidence indicating any of the images in question were thumbnails. And the district court is "entitled to rely" upon facts from the Probation Office where the defendant does not present evidence to contradict those facts. *See United States v. Denson*, 728 F.3d 603, 615 (6th Cir. 2013) (quoting *United States v. Geerken*, 506 F.3d 461, 467 (6th Cir. 2007)). Here, the government's unchallenged revised calculation revealed that "at least sixteen (non-duplicate) videos" of known child pornography victims were found on Holland's computer devices. Because the Guidelines count each video as the equivalent of 75 images, U.S.S.G. § 2G2.2, cmt. n.6(B)(ii), including the other images on Holland's devices, Holland was deemed to possess 3,127 images of child abuse material. Focusing on the sixteen "non-duplicate" videos cited by the government alone, that is the equivalent of 1,200 unique images, twice the amount that would warrant application of the § 2G2.2(b)(7) enhancement.

In response, Holland invokes the *McNerney* concurrence. But the concurrence agreed that counting duplicates separately is undoubtedly appropriate in cases where those images or videos increase the likelihood of further distribution, such as when they are stored on back-up drives, making them more likely to be lost and fall into someone else's hands. 636 F.3d at 781 (Rogers, J., concurring). This fairly describes Holland's means of collection and storage as well. As Holland thus has not contradicted the government's calculation in any meaningful respect, he has not shown any error (much less plain error) warranting the vacatur of his sentence.

## B. Substantive Reasonableness

A claim that a sentence is substantively unreasonable is a claim "that a sentence is too long (if a defendant appeals) or too short (if the government appeals)." *Rayyan*, 885 F.3d at 442. A sentence is substantively unreasonable if the court placed too much weight on some of the § 3553(a) factors and too little on others in sentencing the individual. *Id.* The determination of

whether a sentence is substantively reasonable is "a matter of reasoned discretion, not math, and our highly deferential review of a district court's sentencing decisions reflects as much." *Id*. (citing *Gall*, 552 U.S. at 51 (2007)). Unlike Holland's procedural challenges to his sentence, a substantive reasonableness challenge to the length of a sentence, regardless of whether an objection is made below, is reviewed for an abuse of discretion. *Vonner*, 516 F.3d at 389. "An abuse of discretion occurs when a ruling is based on an error of law or a clearly erroneous finding of fact, or when the reviewing court is otherwise left with the definite and firm conviction that the district court committed a clear error of judgment." *United States v. Moon*, 808 F.3d 1085, 1090 (6th Cir. 2015) (quoting *United States v. Kerley,* 784 F.3d 327, 347 (6th Cir. 2015)).

Challenging the substantive reasonableness of his sentence, Holland argues that the district court abused its discretion by placing too much weight on the seriousness of his offense, as reflected by the decision to reject Holland's motion for a downward variance. But Holland's variance request was far from run-of-the-mill. From the proposed Guidelines range of 108 to 135 months, Holland sought a variance to roughly four months, a ninety-six percent reduction from the *minimum* Guidelines recommendation. Such a variance would require a compelling explanation. *See United States v. Fink*, 502 F.3d 585, 588 (6th Cir. 2007) (citing *United States v. Collington*, 461 F.3d 805, 809 (6th Cir. 2006)) (noting that the greater a variance from the advisory sentencing range, the greater is the need for justification). Holland has not provided one.

The district court properly considered the sentencing factors, balanced them, and imposed a reasonable sentence. True, the district court placed a great deal of weight on the seriousness of Holland's offense. And for good reason. The victim impact statements offered during the sentencing hearing from "Cindy" and the husband of "Vicky" brought home the fact that child pornography has lasting negative effects on its victims. Cindy described how she had to deal with

severe depression, self-harm, and suicidal thoughts as a result of her experience. And the husband of Vicky described how Vicky's wounds were "opened again and again for the pleasures of strangers," and, relatedly, how she and her family attempt to deal with her resulting dissociative personality disorder, which results in "her memory shut[ting] off to protect her from triggers to perceived traumas."

Nor was Holland's request for a downward variance justified by the facts that Holland lost his father while he was in custody, lost his reputation as a result of his arrest, and experienced harm to his family business by his absence. Adding to those unhappy realities, Holland explained that he likely would not see his elderly mother again if sentenced to prison. But varying downward on the basis of family or other personal matters is justified, if at all, only in circumstances that are particularly unusual. *See United States v. Borho*, 485 F.3d 904, 913 (6th Cir. 2007). That does not describe limitations on business efforts and family relations, which are common, if not unfortunate, consequences of extended periods of incarceration. *See, e.g.*, *United States v. Husein*, 478 F.3d 318, 321, 323–24 (6th Cir. 2007) (downward departure upheld where defendant's father relied upon around-the-clock healthcare from the defendant and the defendant's mother, and only defendant had a valid driver license).

Nor has Holland shown that his bottom-of-the-Guidelines-range sentence was excessive in any other respect. The district court was well within its discretion to consider Holland's request for time served, an approximately ninety-six percent variance from the Guidelines minimum, as "audacious." Yet the district court nevertheless declined to increase Holland's sentence, as the government requested, to the high end of the Guidelines range. The district court's analysis was thus measured and careful, and plainly substantively reasonable.

## C. Conditions of Supervised Release

Holland also challenges the procedural and substantive reasonableness of his conditions of supervised release. Those conditions, he says, are procedurally defective because the district court failed to explain why it imposed them. And, Holland adds, the substantive component of the conditions are broader than necessary to serve the purposes of his sentencing.

As a threshold matter, we again consider whether Holland fully preserved these challenges. The government emphasizes that Holland, in requesting a downward variance to time served, urged the court to impose a lifetime term of supervised release with the "standard conditions of supervised release imposed in similar cases," including restricting his internet usage. That proposal, however, was rejected. And making an ultimately unaccepted proposal is not tantamount to a waiver of future rights. That is especially true when, by our count, the district court imposed nearly forty conditions, some of which were categorized as "special." As there is no indication that Holland agreed to this full panoply of conditions, we will take up those issues now, albeit under the lens of plain error review. *See United States v. Harmon*, 593 F. App'x 455, 468 (6th Cir. 2014).

1. As purported evidence of procedural unreasonableness, Holland contends that the district court failed to explain the rationale for the special conditions it imposed. A district court must "state in open court the reasons for its imposition of the particular sentence, including its rationale for mandating special conditions of supervised release." *United States v. Carter,* 463 F.3d 526, 528–29 (6th Cir. 2006) (citations and internal quotation marks omitted). Any failure to do so, however, will be deemed harmless error if the reasons are clear from the record. *United States v. Collins,* 799 F.3d 554, 599 (6th Cir. 2015) (quoting *Carter*, 463 F.3d at 529 n.2).

The reasons for the conditions related to the nature of Holland's offense, including the internet restrictions, were obvious. Indeed, as Holland acknowledged in his own sentencing memorandum, it would be appropriate to impose "the usual strict conditions, including bans on computer and internet use" and "all other standard conditions of supervised release imposed in similar cases, and the severe limitations of being a registered sex offender," which, Holland explained, would be "sufficient, but not greater than necessary to protect the public, deter him from re-offending, and deter others similarly situated." As Holland has not identified any condition he believes falls outside these categories, he has not met his burden on plain error review.

2. Holland also challenges the substantive reasonableness of several special conditions. Focusing primarily on the requirement that his computer be monitored, Holland contends that such a condition is unnecessary when he is similarly required to submit himself, his computers, and his other property to search whenever there is reasonable suspicion that he has violated his supervised release conditions. Further, Holland believes that a related condition that requires him to disclose to any employer or potential employer his computer-related restrictions will undermine his ability to obtain employment.

Yet the rationale for these conditions is clear from the record, and from the nature of Holland's offense. A broad search requirement is recommended by the U.S. Sentencing Guidelines as a special condition to be imposed where supervised release is to be imposed following a sex offense. U.S.S.G. § 5D1.3(d)(7)(C). And that condition is particularly apropos for Holland, who is more experienced than most with computer technology, given his computer science degree and his work as a programmer. That Holland is "computer savvy" is thus additional justification for special search restrictions combined with computer monitoring. *See United States*

13

*v. Smith*, 564 F. App'x 200, 208 (6th Cir. 2014).  These conditions ensure that Holland will be unable to use his technological skills to obtain child pornography, at least without detection.

### III.    CONCLUSION

For the aforementioned reasons, we **AFFIRM** the judgment of the district court.