NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a1216n.06

No.  11-1879

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**

*Nov 26, 2012*

LEONARD GREEN, Clerk

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

        v.

RYAN JOHN WALDSCHMIDT,

    Defendant-Appellant.

On Appeal from the United
States District Court for the
Western District of Michigan

_____/

**Before:**    **GUY, DAUGHTREY, and STRANCH, Circuit Judges.**

**RALPH B. GUY, JR., Circuit Judge**.   Defendant Ryan Waldschmidt appeals his below-Guidelines sentence imposed following a plea of guilty to one count of distributing child pornography in violation of 18 U.S.C. §§ 2252A(a)(2)(A) and 2256(8)(A).  Arguing that a greater downward variance was warranted, defendant challenges the reasonableness of the 180-month term of imprisonment.  For the reasons that follow, we find no abuse of discretion and affirm.

**I.**[1]

_____

[1]The undisputed facts are drawn from the unobjected-to presentence report and defendant's admissions during the change-of-plea hearing.

On June 30, 2009, an undercover FBI special agent investigating the trafficking of child pornography signed onto a peer-to-peer file sharing application called Gigatribe, made contact with someone using the screen name "Waldo0889," and received the following greeting:

> Welcome to my collection!  I will only share if you share!  That's how it usually works.  If you have no files shared, you will be moved to the "Unsharing" Group.  If you have decent amount but not enough as me, then you would be placed in "Moderate Sharing" group.  If you have about the same or more, you will be placed in "Extreme Sharing" Group.  I will accept Videos as well.  Must be good quality videos.

The agent, who was physically located in Miami, Florida, accessed the shared folders and downloaded files that contained child pornography.  The agent determined that Waldo0889 was Ryan John Waldschimdt of Kalamazoo, Michigan.  On September 4, 2009, the agent again made contact with Waldo0889, was met by the same greeting as before, and—although the number of files he could access was more limited—downloaded additional files containing child pornography.  Finally, on January 25, 2010, the agent made contact with Waldo0889 for a third time and received a slightly different greeting.  This time, however, no shared folders were available.  The agent believed that sharing privileges had been revoked, as promised, because no files had been uploaded by the agent during the earlier sessions.  Approximately 250 images were downloaded from defendant's shared folders.

Defendant was not present when the search warrant was executed at his residence, but agreed to be interviewed later that day.  During the interview, defendant admitted that he set up the Gigatribe account using the screen name Waldo0889 for the purpose of collecting and trading child pornography.  He used key words such as "pedophile," "hussy," "hussyfan,"

and age ranges such as "13-17" and "13yo" to search for users to invite into his private network. If a user accepted his invitation, or "friend request," he could chat, share files, and find out about other traders. A forensic examination of defendant's computer revealed 2,353 images of child pornography, including 217 known victims. There were also 441 video files, many of which were in excess of five minutes in duration. The files contained many images of prepubescent minors and infants.

Waldschmidt was charged in a two-count indictment with distribution of child pornography, including but not limited to one or more of ten specific images, and possession of child pornography, including but not limited to one or more of a dozen other images. Pursuant to a written agreement, defendant pleaded guilty to count 1 and the government agreed to dismiss count 2. There was no agreement as to sentence, however. At the plea hearing, defendant confirmed that he used the computer to distribute child pornography to the agent through interstate commerce; that he shared files with images of child pornography with those who would share their files of child pornography with him in order to build up his collection; and that the ten files that were the subject of count 1 were, in fact, images of child pornography. The plea was accepted, and a presentence report prepared.

The offense of conviction carries a statutory penalty of not less than 5 and not more than 20 years of imprisonment, and, with no prior criminal history and a total offense level of 37, the Guidelines sentencing range was 210 to 240 months of imprisonment.[2] The offense level was determined under United States Sentencing Guidelines Manual (USSG)

---

[2]The Guidelines range would have been 210 to 262 months, but it was "capped" by the statutory maximum sentence of 20 years (or 240 months).

§ 2G2.2, starting with a base offense level of 22 and adding: two levels for material involving prepubescent minors less than 12 years of age (USSG § 2G2.2(b)(2)); five levels for offenses involving distribution for the receipt of something of value (USSG § 2G2.2(b)(3)(B)); four levels for material that portrayed sadistic or masochistic conduct or other depictions of violence (USSG § 2G2.2(b)(4)); two levels for possession that resulted from the use of a computer (USSG § 2G2.2(b)(6)); and five levels for offenses involving 600 or more images (USSG § 2G2.2(b)(7)(D)). The adjusted offense level of 40 was then reduced by three levels for acceptance of responsibility (USSG § 3E1.1(a) and (b)). Defendant did not object to the application of any of these specific offense characteristics, or challenge the calculation of the advisory Guidelines range, but moved for a downward variance for reasons articulated in the motion and during the sentencing hearing.

At sentencing, the district judge indicated that he had reviewed the presentence report, the two sealed psychological evaluations of defendant, and the arguments made concerning the motion for a downward variance. Aside from Waldschmidt's own brief statement to the court, and the plea for leniency from defendant's mother and sister, defense counsel argued for a downward variance for reasons that included: defendant's history and characteristics (youth, no prior criminal history, and sexual abuse by his father); defendant's cooperation with the government in an unrelated prosecution for murder (willing but not asked to testify to a jail-house conversation he overheard); and the indiscriminate structure of and other policy disagreements with the child-pornography Guidelines (harshness due to the wide application of aggravating factors and lack of distinctions between offenders). The district

judge expressly recognized his discretion to vary from the Guidelines, indicated that he had "considered all of defendant's arguments in support of his request for a lower sentence," and explicitly rejected the arguments based on policy disagreements with the Guidelines. Addressing the relevant § 3553(a) sentencing factors, the district judge granted a downward variance based only on the finding that a sentence at the low-end of the Guidelines range would be excessive in light of the cooperation Waldschmidt was willing to provide in the unrelated prosecution and the rehabilitative steps that it represented. 18 U.S.C. § 3553(a). Varying below the low-end of the Guidelines range of 210 months, defendant was sentenced to a 180-month term of imprisonment to be followed by a 25-year term of supervised release. Arguing for a greater downward variance, defendant filed this timely appeal.

## II.

"District courts have broad discretion to impose sentences within the statutory range." *United States v. Overmyer*, 663 F.3d 862, 863 (6th Cir. 2011) (citing *United States v. Booker*, 543 U.S. 220, 233 (2005)). That being the case, appellate courts "must review all sentences—whether inside, just outside, or significantly outside the Guidelines range— under a deferential abuse-of-discretion standard." *Gall v. United States*, 552 U.S. 38, 41 (2007).

A district court abuses its discretion if it commits significant procedural error, "such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence—including

an explanation for any deviation from the Guidelines range." *Gall*, 552 U.S. at 51; *see United States v. Bolds*, 511 F.3d 568, 579-80 (6th Cir. 2007). A sentencing explanation is adequate of it allows for meaningful appellate review. *Gall*, 552 U.S. at 50; *see United States v. Brooks*, 628 F.3d 791, 796 (6th Cir.), *cert. denied*, 131 S. Ct. 3077 (2011). A sentence may be substantively unreasonable when, taking into account the totality of the circumstances, the district court "selects a sentence arbitrarily, bases the sentence on impermissible factors, fails to consider relevant sentencing factors, or gives an unreasonable amount of weight to any pertinent factor." *United States. v. Conatser*, 514 F.3d 508, 520 (6th Cir. 2008) (citing *United States v. Webb*, 403 F.3d 373, 385 (6th Cir. 2005)).

## A.    "Particularly Disturbing" Images

The district judge commented, in the context of addressing the nature and circumstances of the offense, that although defendant's was not the most extensive collection he had ever seen, some of the material was "particularly disturbing," especially material described in paragraph 14 of the presentence report, and was "extremely graphic, extremely degrading to the children involved in the photographs." Later, after recognizing that defendant was not a "hands-on" offender and that defendant had not initially comprehended the seriousness of the situation, the district judge reiterated that some of the images were "particularly disturbing." Waldschmidt contends that the district judge erred by giving undue weight to the "particularly disturbing" nature of five of the images that were the subject of

the offense of conviction. This presents a challenge to the substantive reasonableness of the sentence.[3]

*Not Representative.* Alleging that the government tends to select the most egregious of the images recovered to include in the charges, defense counsel asserts that the five images described in paragraph 14 of the PSR were not necessarily representative of the more than 2000 images and more than 400 videos found on defendant's computer. Actually, at the change-of-plea hearing, defendant agreed that the ten images that were the subject of the distribution charge were representative of the 250 images that were downloaded from defendant's shared files by the undercover agent. Nor is there any basis to conclude otherwise on this record.

*Repugnant and Disgusting.* Defendant seems to argue that undue weight was given to the nature of the images because *all* child pornography is repugnant, so the fact that the images here are disturbing is "not necessarily a remarkable fact." However, the district judge found that the images here were "extremely graphic," "extremely degrading," and "particularly disturbing." Defendant also contends that it was error to consider this because the nature of these images was already counted in the increased offense level based on the age of the children and that the images portrayed sadistic or masochistic conduct. Although a district court may under certain circumstances vary upward based on a fact already addressed by the Guidelines, *United States v. Nixon*, 664 F.3d 624, 626 (6th Cir. 2011), that

---

[3]If defendant were challenging the procedural reasonableness of the sentence on this basis, our review would be for plain error because no objection was made at sentencing concerning the representativeness or disturbing nature of these images. *See United States v. Simmons*, 587 F.3d 348, 355 (6th Cir. 2009).

is not what occurred here. The district judge did not enhance the Guidelines sentence; but considered the nature of the images in deciding not to grant a greater downward variance from the Guidelines.

*Downloading vs. Sharing.* Finally, defendant argues that it was error to consider the content of those images because as a "sharer" rather than a "downloader," defendant did not control what images he received. However, defendant did not claim ignorance of the content of the files he received. Indeed, although defendant objects to the district judge's characterization of his postings as "aggressive," it is clear that he created the file-sharing account, sought out like-minded people wanting to download child pornography, and required a reciprocal sharing of child pornography for them to maintain sharing "privileges." Waldschmidt's status as a "sharer" of child pornography does not support a claim of lesser culpability, and it was not an abuse of discretion to consider the content of the images in evaluating the seriousness of the offense.

## B.     Re-Victimization

Defendant argues that it was improper for the district judge to find, in weighing the nature and circumstances of the offense, that the downloading or sharing of child pornography already on the internet contributed to the re-victimization of the children in those images. In a variation on the reasons to disregard the Guidelines, defendant contends that an offender who has had no actual contact with the child, did not make or finance the making of the images, and was not the *first* to upload it to the internet, has created no additional harm to the child by then copying, downloading, or sharing the images with others

irrespective of the fact that it results in new offenders viewing the images. Defendant argued at sentencing that his conduct was less harmful because he had no contact with the children and merely downloaded and shared the images with others.

The district judge rejected this argument and expressed agreement instead with the Third Circuit's discussion—including that the downloading of child pornography re-victimizes the children in the images—in *United States v. Goff*, 501 F.3d 250, 258-60 (3d Cir. 2007) (holding that substantial downward variance was substantively unreasonable). The court in *Goff* found that the nature and seriousness of the offense of possession of child pornography was improperly discounted based on the lack of "hands-on" sexual contact and the suggestion that downloading for personal viewing was a victimless crime. *Id*. at 259 ("Consumers such as Goff who 'merely' or 'passively' receive or possess child pornography directly contribute to this continuing victimization."). Also, the fact that the offender did not commit a more serious crime by molesting a child, did not mean his offense was dramatically different from other child pornography cases so as to warrant a substantial downward variance. *Id*. at 260.

We have no difficulty concluding that the district court did not abuse its discretion in evaluating the seriousness of the offense by finding that the further distribution of child pornography by defendant involved re-victimization of the children in those images, or by rejecting the claim that the sharing and redistribution of child pornography already in circulation did not result in additional harm. *See United States v. Bistline*, 665 F.3d 758, 766 (6th Cir. 2012) (recognizing continuing harm from defendant's knowing possession of child

pornography), *petition for cert. filed*, 80 U.S.L.W. 3711 (U.S. May 24, 2012) (No. 11-1431).

Nor was it substantively unreasonable to decline to grant a downward variance on this basis.

## C.     Policy Disagreements with the Guidelines

Defendant argues that the child pornography Guidelines should be disregarded because Congress interfered with and promulgated amendments to the Guidelines without scientific or empirical basis, relying on the often-cited paper written by Troy Stabenow, an assistant public defender, entitled *Deconstructing the Myth of Careful Study: A Primer on the Flawed Progression of Child Pornography Guidelines*. *See also United States v. Grober*, 624 F.3d 592, 603 (3d Cir. 2010); *United States v. Dorvee*, 616 F.3d 174, 184-86 (2d Cir. 2010). Confronted with similar arguments, however, this court has squarely held that "a district court cannot reasonably reject § 2G2.2—or any other guidelines provision—merely on the ground that Congress exercised, rather than delegated, its power to set the policies reflected therein." *Bistline*, 665 F.3d at 762; *see also United States v. McNerney*, 636 F.3d 772, 778 (6th Cir. 2011). Further, this court has also specifically rejected the claim that "§ 2G2.2's purported lack of empirical grounding makes it unfit for deference." *United States v. Cunningham*, 669 F.3d 723, 733 (6th Cir.), *cert. denied*, __ S. Ct. __, 2012 WL 3191361(Oct. 1, 2012). Indeed, "a district court is entitled to rely on the § 2G2.2 enhancements unless it has a reasonable policy basis for not doing so." *Id.*

It is also well-established that a district court has the authority to categorically reject a Guidelines range based on policy disagreements with the Guidelines, although a decision

to do so must be subjected to close scrutiny. *See United States v. Herrera-Zuniga*, 571 F.3d 568, 584-85 (6th Cir. 2009). This case is not an appeal from such a departure or variance, however; but an appeal from the decision not to vary downward. We have recognized that—even in the context of the controversy over § 2G2.2—"the fact that a district court *may* disagree with a Guideline for policy reasons and *may* reject the Guidelines range because of that disagreement does not mean that the court *must* disagree with that Guideline or that it *must* reject the Guidelines range if it disagrees." *United States v. Brooks*, 628 F.3d 791, 800 (6th Cir.), *cert. denied*, 131 S. Ct. 3077 (2011); *see also Grober*, 624 F.3d at 609 (emphasizing that a district court that does not have a policy disagreement with § 2G2.2 need not vary on that basis).

Here, Waldschmidt argued in various ways, and through reliance on *United States v. Diaz*, 720 F. Supp. 2d 1039, 1041-42 (E.D. Wis. 2010) (collecting cases), that the history, structure, and effect of the child pornography Guidelines resulted in indiscriminate and unduly harsh sentences and should not be given deference by the district court. Defense counsel reiterated at sentencing the argument that the Guidelines result in unduly harsh sentences because most of the enhancements apply to most offenders (*i.e.* the use of a computer, children less than 12 years of age, penetration and therefore sadistic or masochistic images, more than 600 images) and urged the district court to vary downward to moderate the severity of the punishment. The district judge unquestionably recognized his authority to disregard or vary downward based on disagreement with the Guidelines, rejected defendant's categorical objections to these enhancements, and considered the relevant §

3553(a) factors and whether application of the enhancements in defendant's case resulted in an unduly harsh sentence. Indeed, the district judge concluded that a sentence at the bottom of the Guidelines range would be excessive in light of defendant's willingness to cooperate with the government in the unrelated case.[4]

While a within-Guidelines sentence is afforded a rebuttable presumption of reasonableness, a defendant's burden to demonstrate that a below-Guidelines sentence was substantively unreasonable is even more demanding. *United States v. Curry*, 536 F.3d 571, 573 (6th Cir. 2008). This burden has not been met in this case. *See Gall*, 552 U.S. at 51 ("The fact that the appellate court might reasonably have concluded that a different sentence was appropriate is insufficient to justify reversal of the district court.").

**AFFIRMED**.

---

[4]Defendant argues that policy disagreements with USSG § 2G2.2 have created disparities in federal sentencing of child pornography cases. To the extent that this argument is one of procedural unreasonableness, our review is for plain error since it was not raised in the district court or objected to in response to the *Bostic* question. As the district judge recognized, one of the § 3553(a) factors to be considered is "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). That some courts have departed or varied downward in cases of downloading or possession of child pornography was not lost on the district court. Nor is there any question that the district judge did not see defendant's conduct as simple downloading. Defendant does not explain how granting an even greater downward variance based on a conviction for distributing child pornography would reduce unwarranted disparities. Defendant has not demonstrated procedural or substantive error on this basis.